JAMES T. SULLIVAN *vs.* ROBERT G. VIOLETT AND JAMES DEMPSEY, PARTNERS, TRADING UNDER THE FIRM OF VIOLETT & DEMPSEY.—*December Term*, 1847.

*V. & D.* sued *S.*, and declared against him as maker of a note, and upon the common counts. The note was signed by *N. & M.*, payable to the plaintiffs, or order, and across the back of it, *S.* had written his signature in blank. The plaintiffs proved that the signature, *N. & M.*, was written by *S.*, and that he was a partner of that firm. The note was given for a balance due by *N. & M.* to the plaintiffs, upon their request, who had asked for the note endorsed by *S.* The defendant proved that he was not the partner of *N. & M.*, but their agent, and the plaintiffs knew it. The plaintiffs prayed the County Court to instruct the jury, that if they believe that the name of *S.* was written by him on the back of the note at the time it was signed by *N. & M.*, or shortly afterwards—that then the defendant, even if he were not a member of the firm of *N. & M.* is liable in this action, and the plaintiffs entitled to recover, which was granted, and affirmed upon appeal.

The defendant *S.* then prayed for an instruction, that if the jury should believe that the plaintiffs solicited the note from *N. & M.*, to be endorsed by *S.*, and that he was authorized by *N. & M.* to sign their names to such note, and after writing his own name on the back of said note, to send the same to the plaintiffs; and that *S.* did sign the name of *N. & M.* to said note, and wrote his name on the back of the same as endorser, as requested by the plaintiffs,— that then the jury cannot find for the plaintiffs, as the defendant's liability is not that of a maker of said note. The County Court refused said prayer, which was affirmed upon appeal.

Upon the back of the note of *N. & M.*, payable to *V. & D.* or order, *S.* wrote his name generally. *Held*, that he was liable to *V. & D.* as maker.

APPEAL from *Harford* County Court.

This was an action of *assumpsit*, brought on 26th March, 1844, by the appellees against the appellant. The plaintiffs counted upon the promissory note of the appellant, dated 28th January, 1841, as payable on the 1st June, 1841, to the appellees, and also upon the money counts. The defendant pleaded *non-assumpsit and actio non infra tres annos*, on which pleas issues were joined. The verdict was for the appellees.

The plaintiffs, to support the issue on their part, read in evidence to the jury two commissions, and the proofs taken thereunder.

*M. Snyder, Jr.* proved that in the spring of the year, (during the fishing of 1840,) when *Dutton* and *Myers* were fishing just below the late residence of *Major Green,* and adjoining the fishery then occupied by me, *Myers* encroached on me by running or hauling his seine in my berth, and thus essentially interfering with my rights, I protested against his trespassing on me, and finding him obstinately persisting in his course, so injurious to my rights, I had a vessel anchored on the border of my fishery, to prevent a recurrence of the interference above-mentioned. The fisheries occupied by *Dutton & Myers,* and myself, were immediately contiguous—theirs being the next below that occupied by me. By the means thus described, *Myers* was prevented from further 'encroachments, and his progress in his fishing was partially suspended, when he found me determined not to permit him to fish in my berth. During these difficulties, a man came to me, and said his name was *Sullivan,*—and also declared that he was one of the partners engaged in the fishery above-mentioned, with *Dutton & Myers,* and that he came to endeavor to produce a reconciliation between his partner, *Myers,* and myself, which he hoped might be done without further trouble. I answered him by declaring my readiness to do in the premises whatever any two disinterested fishermen might decide to be right. I am not positive that *Sullivan,* who spoke to me, as above stated, was *James T. Sullivan,* but I know he walked a little lame, stepping rather on the toes of one of his feet, as if his heel did not touch the ground, and I understood then that he was *James T. Sullivan.* In his conversation with me, the said *S.* intimated that he was the only responsible partner of the above firm of *Dutton & Myers.* He gave me fully to understand, that if the said firm should sustain any loss, he, *S.,* must bear the burden; that he knew nothing about any contract, written or oral, between the said parties.

*F. X. Masterton* proved that he knew from general reputation and intercourse, that *George H. Dutton* and *Alexander Myers* were members of the firm of *Dutton & Myers;* and in the spring of 1840, *Mr. James T. Sullivan,* the defendant, in-

formed him that he was a member of said firm, which was then engaged in the business of fishing on the *Potomac* river.

The plaintiffs gave in evidence to the jury, that the note drawn by *Myers & Dutton* in favor of the plaintiffs, viz:

" *Havre de Grace, Jan'y 28th,* 1841.

" Note, $490. On the 1st day of June, we promise to pay *Violett & Dempsey*, or order, $490, for value received.

" DUTTON & MYERS."

Across the back of which said note, was thus written, to wit: "*Jas. T. Sullivan*"—in the hand-writing of the defendant,—and *that the signature to said note is also in the handwriting of defendant.*

The plaintiffs further offered in evidence the following letter from *Dutton & Myers* to plaintiffs :

"*Gentlemen,*—Above we send you our note, payable on 1st June next, for the balance due you, as per your account rendered. We have made the note payable on the 1st of June, as before that time we will be unable to get money here, and we hope that will be satisfactory to you. We have delayed sending the note, hoping that we would have been able to send you some money—but have been disappointed. Should you have an opportunity of disposing of our seine and ropes, you will confer a favor by letting us know.

"Very respectfully, yours,

" DUTTON & MYERS."

"MESSRS. VIOLETT & DEMPSEY, *Alexandria.*"

And proved that the body of said letter, as well as the signature to and direction of the same, were in the handwriting of the defendant.

The defendant then read in evidence the following letter from the plaintiffs to *Myers & Dutton:*

*Alexandria, December 23d,* 1840.

"MESSRS. DUTTON & MYERS, *Gentlemen :*

"Annexed you will find a statement of our account against you for the rent of *Wright's Point Fishery,* showing a balance

due us, without interest, of $490, for which we will be glad to receive your note, payable the 1st May next, *endorsed by Mr. Sullivan*, or send us your draft on some merchant in *Baltimore*, accepted, payable as above-mentioned. We have credited you with the vats, at $35 per pair—the price we were to allow for them when bedded on the landing and caulked, (as you will find by referring to *R. G. Violett's* letter to you, written last winter;) but the vats are not all there; nor are those you have put up of such quality as we had been led to believe we were to receive." "*Mr. Wareham's* note we will hold until due, and hope to find it met promptly. Should we hear of an opportunity to dispose of your outfit, it will give us pleasure to do all we can to aid you in effecting a sale, but fear there is but little probability of such good luck befalling us. There are two outfits on the *Potomac*, to be sold in the course of this winter, and very much doubt whether there can be found as many purchasers to take them.

"Violett & Dempsey."

*Alexandria, Dec'r 12th,* 1840.

*Dutton & Myers*     To *Violett & Dempsey,* Dr.

For 1 year's rent of *Wright's Point Fishery*, due as
   per article of lease, June 1st, 1840, . . . $900 00
Cr.—1840, December 12th.   By 6 pair of vats, put
         up by them on the premises, as per agree-
         ment, at $35 per pair, . . $ 210 00
"    "   *George Wareham's* note, dated
         22d Nov. 1840, and payable
         to them on the 1st June next,
         and by them endorsed, for . 200 00
                      ——— 410 00

        Balance due *V. & D.,* . . . $490 00

Which was admitted to be in the hand-writing of the plaintiffs. And the following lease, which is in the words and of the tenor following, to wit:

*Lease.* " These articles of agreement of lease, made and entered into this 4th November, 1839, between *Robert G. Violett* and *James Dempsey,* of, &c., and *George H. Dutton* and *Alexander K. Myers,* of, &c.,—witness that the said *V. & D.* have leased, and do hereby lease, to the said *D. & M.* the fishing landing and shore, called, &c."

And then offered evidence by *G. H. D.* that defendant never was a partner in the said firm of *Dutton & Myers ; that plaintiffs knew such to be the fact ;* that defendant, who resided in *Havre de Grace,* afterwards became *the agent of said firm,* and as such in the absence of said *Dutton* from *Havre de Grace,* and the inability of said *Myers* to attend to business, acted under the direction of said *Dutton* as agent, and so wrote the said letter offered in evidence by plaintiffs and the note on which this suit was instituted, and in compliance with the request contained in said letter of plaintiffs to *Dutton & Myers ;* and further proved by *Samuel E. Treadwell,* that he was present at the conversation referred to in the testimony taken under and returned with the said commission to *Alexandria,* as having taken place between the *defendant* and the witness, *Matthias Snyder ;* and that said defendant then stated to said *Snyder,* that he was not a partner, and had no interest in said firm of *Dutton & Myers.*

The plaintiffs prayed the court to instruct the jury :

That if they believe from the evidence that the name of *James T. Sullivan,* the defendant, was written by him upon the back of the note offered in evidence at the time said note was signed by *Dutton & Myers,* or shortly afterwards, that then said defendant, even if he were not a member of the firm of *Dutton & Myers,* "is liable in this action, and the plaintiffs are entitled to recover," which prayer was granted by the court.

The defendant then prayed the court upon the evidence above stated to grant the following prayer:

" If the jury shall believe that the plaintiffs addressed the letter of the 23d December, 1840, offered in evidence in this cause to *Dutton & Myers,* requesting their note endorsed by the defendant, and that the defendant was authorized by

24    v.6

*Dutton & Myers* to sign their names to the note upon which this suit was brought, and after writing his own name on the back thereof, to send the same to plaintiffs, and that defendant did sign the name of *Dutton & Myers* to said note and write his own name on the back of the same, as endorser, as requested by the plaintiffs in said letter, that then they cannot find for the plaintiffs, as the liability of defendant is not that of a maker of said note—which the court (ARCHER, C. J., and PURVIANCE, A. J.,) refused.

The defendant excepted, and prosecuted this appeal.

The cause was argued before DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By H. W. ARCHER for appellant.

This was an action of *assumpsit*, brought to May term, 1844, by *Violett & Dempsey* against *James T. Sullivan*, the appellant, upon a promissory note, drawn in the following words:

"*Havre de Grace, January 28th,* 1841.

"On the 1st day of June, we promise to pay *Violett & Dempsey*, or order, $490, for value received.

"Signed,      DUTTON & MYERS."

And endorsed in blank by *James T. Sullivan* at the time it was drawn.

The declaration charged *Sullivan* as maker of the note, with counts for work and labor, goods sold and delivered, and the common money counts. The circumstances attending the transaction, as proved at the trial, were these:

*Violett & Dempsey* having a claim against *Dutton & Myers*, on the 23d December, 1840, wrote to them as follows:

"*Gentlemen,*—Annexed you will find a statement of our account against you for the rent of *Wright's Point Fishery*, shewing a balance due us, without interest, of $490, for which we will be glad to receive your note, payable the 1st day of May next, or send us your draft on some merchant in *Baltimore*, accepted, payable as above-mentioned."

On the 28th January, 1841, *Dutton & Myers* sent to plaintiffs the note on which this suit was instituted,—and at the same time wrote to them as follows:

"*Gentlemen,*—Above we send you our note, payable on the 1st of June next, for the balance of your account rendered. We have made the note payable the 1st of June, as before that time we will be unable to get money here. We have delayed sending the note, hoping that we would be able to send you some money, but have been disappointed."

And evidence was offered to prove that the above letter and note were written and sent to plaintiffs by *Sullivan,* acting as agent for *Dutton & Myers.* No proof was offered of demand on *D. & M.,* or of notice of non-payment of the note by them.

The above stated facts being in evidence, the defendant prayed the court to instruct the jury—that *Sullivan* could only be treated as an *endorser* of a negotiable note, and as such could only be held liable, upon proof of demand on the maker, and due notice of non-payment; that the form of the note, and the position of defendant's name on it, indicate the intention to become responsible only as second endorser, endorsing for the accommodation of the plaintiffs. This is the legal inference: in this view full effect is given to defendant's signature,—and there is no fact in the case from which the court could infer that he ever assumed to become liable to plaintiffs. *Clopper vs. Union Bank,* 7 *H. & J.* 102. *Farmers' Bank vs. Duvall,* 7 *G. & J.* 88. *Seabury vs. Hungerford,* 2 *Hill N. Y. R.* 80. *Hall vs. Newcomb,* 3 *Hill N. Y. R.* 233. *Story on Promissory Notes,* (2d edition,) sections 133, 134, 479 and 480. *Hough vs. Grey,* 19 *Wend. R.* 202.

2d. That if parol evidence be admissible to rebut the legal presumption, that *S.* could only be held liable as endorser upon the note, and to charge him as maker or guarantor; or even if it should be held, that the fact, that he, not being the payee, endorsed the note at the time it was made, constituted him *prima facie,* a joint promissor with *Dutton & Myers.* The correspondence between the parties, and the fact that he was not privy to

the original consideration for which the note was given, should have been submitted to the jury, to find the intention of the parties. *Story on Promissory Notes*, sec. 479. *Herrick vs. Carman*, 12 *J. R.* 161. *Tillman vs. Wheeler*, 17 *J. R.* 326. *Tenney vs. Prince*, 4 *Pick. R.* 385. *Knapp vs. Parker*, 6 *Vermont R.* 642. *Flint vs. Day*, 9 *Vermont R.* 347. *Nash vs. Skinner*, 12 *Vermont R.* 227.

3d. That even if *Sullivan* be considered a promissor upon the note, the correspondence between the parties furnishes evidence to shew that the note was given for a pre-existing debt, due by *Dutton & Myers* to the plaintiffs,—and therefore void under the statute of frauds. This evidence should have been submitted to the jury, but was excluded by the prayer granted by the court. *Wyman vs. Grey*, 7 *H. & J.* 409, 414. *Rogers vs. Walters*, 2 *G. & J.* 64. *Elder vs. Warfield*, 7 *H. & J.* 391. *Elliott vs. Giese*, 7 *H. & J.* 457. *Aldridge vs. Turner*, 1 *G. & J.* 427.

By COLEMAN YELLOTT for the appellees.

1. Some effect must be given to the signature of *Sullivan*, *ut res magis valeat quam pereat*.

2. He is not an *endorser* of the note. *Story on Prom. Notes*, sections 3, 4, 6, 135. *Stat.* 3 and 4 *Anne*, ch. 9. The note could not have been negotiated without the further endorsement of *Violett & Dempsey*. They would thus be compelled to incur a liability against their will. In case of non-payment of the note, *Sullivan*, as *second* endorser, could have sued them as *prior* endorsers. This would defeat their object in seeking *Sullivan's* signature. They could thus become security to him, not he to them.

3. He became a *joint maker* of the note—a joint promissor with *Dutton & Myers*. Name of maker may appear on *any part* of the note. *Story on Notes*, section 34. *Chitty on Bills*, margin p. 185, 186. *Taylor vs. Dobbins*, 1 *Strange, R.* 395. If *endorser's* name on the face, or at bottom of note, still a good endorsement. *Story on Notes*, sec. 121. *Story on Bills of Exchange*, sec. 204. *Gibson vs. Powell*, 6 *How. Miss. R.* 60.

So if *maker's* name on back of note, may still be maker. Endorser of note stands as drawer of a bill of exchange. *Story on Notes, sec.* 129. But what authority had *Sullivan* to draw in favor of *Violett & Dempsey* on *Dutton & Myers?* The latter had already promised to pay the former. The holder may write the words of note over the signature on the back; if *he* does not, the *law* writes it for him, and will give signature the same effect as if at bottom of the note. See *Josselyn vs. Ames,* 3 *Mass. R.* 274. *Hunt's Ad. vs. Adams,* 5 *Mass. R.* 361. *Hunt's Ad. vs. Adams,* 6 *Mass. R.* 519, 523. *Ulen vs. Kittredge,* 7 *Mass. R.* 233, 235. *White vs. Howland,* 9 *Mass. R.* 314, 316. *Moies vs. Bird,* 11 *Mass. R.* 438, 440. *Sumner vs. Gay,* 4 *Pick. R.* 311. *Tenney vs. Prince,* 4 *Pickering R.* 385, 387. *Baker vs. Briggs,* 8 *Pick. R.* 122, 130. *Oxford Bank vs. Haynes,* 8 *Pick. R.* 423. *Chaffee vs. Jones,* 19 *Pick. R.* 263. *Austin vs. Boyd,* 24 *Pick. R.* 64. *Knapp vs. Parker,* 6 *Vermont R.* 642, 645, 646. *Flint vs. Day,* 9 *Vermont,* 347. *Nash vs. Skinner,* 12 *Vermont R.* 220, 227, 229. *Martin et al. vs. Boyd,* 11 *New Hamp. R.* 385. *Beckwith vs. Angel,* 6 *Connect. R.* 317, 318, 319, 320. *Bright vs. Carpenter et al.* 9 *Ohio R.* 139. *Cooley vs. Lawrence,* 4 *Martin's Louisiana R.* 639. The principle recognized by these authorities is, that if *A.* puts his signature in blank upon a note, payable to *B.* or order, *at the time* of making of the note, *A.* becomes a *co-maker;* if *after* the making and delivery up of the note, then such signing constitutes *A.* a *guarantor.* See *Story on Notes, sec.* 58, 476. *Gist's Ad. vs. Drakely,* 2 *Gill's R.* 341. Until the case of *Hall vs. Newcomb,* 3 *Hill's N. Y. R.* 234, there was no *New York* decisions asserting a different doctrine. Some of them drew a distinction between notes payable to *A.* or *bearer,* and these payable to *A.* or *order,*—holding that blank signatures on the *former* by a third party, would constitute him merely an *endorser,* or the *latter* kind, a *joint maker.* See *Herrick vs. Carman,* 12 *Johnson R.* 159. *Nelson vs. Dubois,* 13 *Johnson,* 175, 178, 179. *Campbell vs. Butler,* 14 *Johnson,* 349, 351. *Tillman vs. Wheeler,* 17 *Johnson,* 326, 327, 328. *Seymour vs. Van Slyck,* 8 *Wendell,* 421. *Dean vs. Hall,* 17

*Wendell,* 214, 215, 216. *Hough vs. Gray,* 19 *Wendell,* 202, 203. *Seabury vs. Hungerford,* 2 *Hill,* 80, 83. *Miller vs. Gaston,* 2 *Hill,* 188, 190.

It seems that in *Hall vs. Newcomb,* 3 *Hill,* 234, the Supreme Court being *equally divided,* the judgment below was affirmed. The case was afterwards taken to the Court of Errors. See 7 *Hill,* 416,—and there twice argued. Judgment of Supreme Court affirmed. Should a single case *thus* decided outweigh the numerous decisions of six States of the Union, and the deliberate adjudications of a *Parsons,* a *Parker,* and a *Shaw,* of *Massachusetts*—of a *Spencer* and *Thompson,* of *New York,* and of a *Williams,* of *Vermont?*

4. The court below was right in not leaving it to the *jury* to construe the contract. In cases of signatures on *blank* paper, rule would be different. Here the note was filled up at the time of *Sullivan's* signing. The *law* then construes the contract. See 11 *Mass. R.* 122. 11 *New Hampshire,* 388. Parol evidence is inadmissible to explain or vary the written contract. If *Sullivan's* intention could be given in evidence, still it must be first shown that plaintiffs below had notice of such intention previous to accepting note. 11 *Mass. R.* 436. 12 *Vermont R.* 219. 9 *Vermont R.* 345. 6 *Vermont,* 642. There being no evidence of such notice, the question of intention could not have been submitted to jury. Different rule would enable *Sullivan* to perpetrate fraud on *Violett & Dempsey.* They are presumed to know the *law,* but not the notions of a *Harford* County jury. Relying on the construction which the law gave the signature, they regarded *Sullivan* as jointmaker, and therefore gave no notice of dishonor.

5. Not necessary that blank endorsement should have been filled up. See *act of* 1825, *ch.* 35. Point not having been raised below, cannot be taken advantage of here. 1825, *ch.* 117.

6. Sufficient consideration for *Sullivan's* signing to support action against him as joint-maker. *Story on Notes, sec.* 186.

    By the court:           **JUDGMENT AFFIRMED.**