IRVINE KEYSER AND REDMOND C. STEWART, AD-MINISTRATORS, *vs.* S. DAVIES WARFIELD.

*When Parties Endorsing Promissory Note Before Delivery Liable as Joint Makers—Contribution Between Makers—Filling in Blank in Promissory Note.*

When a promissory note with a blank for the name of the payee has been negotiated, the holder thereof is entitled to insert his name as payee.

Parties who put their names upon the back of a promissory note, a blank being left for the name of the payee, before its delivery are presumed to be joint makers and not endorsers; and if one of these parties

pays the note he is entitled to contribution from his co-maker unless the latter proves that there was an agreement between them at the time that their liability should be that of endorsers.

A bank required two officers of a corporation to endorse personally, as security for its payment, the promissory note of the corporation payable to the order of blank as a condition precedent to the bank's discounting the note. Subsequently one of the endorsers paid the note and brought this action against the other to recover half of the sum so paid. No protest had been made or notice given to either endorser. *Held*, that there was evidence to the effect that the parties were joint makers, and the fact that the president of the bank asked that the note offered to him for discount be endorsed, as was done, does not show that the endorsers intended to become liable as such, the word *endorsers* not having been used in its technical sense.

*Held*, further, that it was error to allow the plaintiff at the trial to insert the name of the bank as payee of the note in the presence of the jury, since the action was not on the note and it was not necessary to fill in the blank, and the controversy was as to whether the plaintiff and defendant were joint makers or endorsers.

Appeal from the Superior Court of Baltimore City (WICKES, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BOYD and SCHMUCKER, JJ.

*Randolph Barton* and *James M. Ambler*, for the appellant.

It is submitted that if the appellant ever became liable to the bank on the two notes in question, his liability was only that of a joint *endorser* with Warfield. That the bank because of its failure to make demand for payment of the notes on the maker, and its failure to protest the notes, or in any way inform Mr. Keyser of the default of the real maker of the notes (the Md. Mfg. & Construction Co.) within a proper time after the notes were given, lost all rights against Keyser, no matter what rights it may have had against Warfield, with whom it had various transactions, including these notes, running through a number of years. That between Warfield and Keyser there was never any relation regarding this matter other than that of *joint endorsers*, and that Warfield cannot hold Keyser responsible unless he can fasten upon him the liability of an endorser which only changes from that of a con-

tingent liability to that of an absolute liability after certain things have been done, viz.: demand, protest, notice, &c.

In the Maryland cases where parties who endorsed notes when made and before delivery were treated as joint makers, the payee's name was written in the note before it was delivered. In such cases the plaintiff is required only to prove the signatures, and the conclusion then follows (in the absence of evidence repelling the presumption) that the "backers" of the note were joint makers.

In *Sittig* v. *Birkestack*, 38 Md. 158, the note was drawn to the order of blank. In that form it was signed on the back by Sittig. Birkestack wrote his name in the blank, and the Court ruled that if in fact Sittig intended to bind himself as maker, then Birkestack had a right to insert his own name as payee; but the Court says particularly that he only had a right to so insert his name, if it was the *contract* that Sittig was to be a maker of the note. There was no *presumption* that Sittig was a maker—it required proof from the plaintiff that he had contracted to be a *maker*.

So in this case, the note looked at as originally constructed would in natural, mercantile and legal order, be filled in with the names of Warfield and Keyser as payees. Then the bank would have held the obligation of the maker, plus the obligation of the endorsers.

Now apply the test suggested in Sittig and Birkestack. The bank refused the notes unless *endorsed* by Warfield and Keyser. Keyser reports this refusal. The notes are prepared and handed to the bank. Could the bank honestly write in its own name as payee, and thus radically change the nature of the obligation of Warfield and Keyser, from that of endorsers which it had demanded, into that of joint makers, which it had not stipulated for.

We submit that even without a word of testimony as to what the bank demanded, and as to what Warfield and Keyser agreed to do, the bank could only have traced its title to the note by filling in the blank with the names of Warfield and Keyser, thus making them endorsers only. But when we

find that the case made by the plaintiff shows expressly that Warfield and Keyser were on the note as endorsers, the bank could not then involve them in any other liability.

If the obligation of the defendant was that of endorser, then the notes should have been presented for payment within a reasonable time after date, and if not paid notice should have been given to the endorsers. What is a reasonable time, is a question of law—seven months held not to be a reasonable time. *Mudd's Admx.* v. *Harper*, 1 Md. 110; 1 *Daniel on Negotiable Instruments*, sec. 606. Joint endorsers—both entitled to notice *People's Bank* v. *Keech*, 26 Md. 521.

Our contention was and is that the word "endorse" was intended and understood by all to have its plain and usual meaning, and there was no evidence of any agreement, contract or understanding beyond the demand of an "endorsement" and compliance with that demand. It might have been competent for the Court, at the request of the plaintiff, to instruct the jury that the form of the notes created a *prima facie* presumption that the plaintiff and defendant intended to be joint makers unless the jury should find that it was the intention and understanding *of all parties* that they were to be liable only as endorsers. That would have been the converse of the defendant's sixth prayer, and in that shape the two instructions would have been consistent and the whole question of the intention of the parties would have been left to the jury. But, as it stands, the plaintiff's prayer tells the jury that if they believe that Mr. Thomas said that he would not discount the notes unless they were "endorsed" by Mr. Warfield and Mr. Keyser, and that thereupon Mr. Warfield and Mr. Keyser wrote their names on the back of the notes and "that there was no other agreement, contract or understanding or intention between said plaintiff and said defendant at that time" then the verdict must be for plaintiff. To relieve the defendant, the jury was required to find some "agreement, contract or understanding or intention" other than what? Obviously something other than the demand of an endorsement and compliance with that demand. This precluded the jury from con-

sidering what was meant by the word "endorse." It contradicted and completely nullified the defendant's granted prayer; and, as we believe, was not only erroneous as an abstract legal proposition, but had the further vice of inconsistency with the other instruction that was granted in the same case, and thus must have confused and misled the jury as to what was meant.

This prayer and the defendant's sixth prayer, which was granted, cannot stand together. To grant both was to confuse and mislead the jury. They are inconsistent. For the plaintiff, the Court said in effect to the jury, "if you find that Thomas said he would not discount the notes unless endorsed by Warfield and Keyser, and that Keyser told Warfield what Thomas said, and the notes were then endorsed as required, then you can find for the plaintiff, *provided* you find "that there was no other agreement, contract or understanding, or intention between said *plaintiff* and said *defendant* at that time."

The jury then turns to the sixth prayer of the defendant, and is told by the Court, in effect "if you find that Thomas said that he would not discount the notes unless endorsed by Warfield and Keyser, and that Keyser told Warfield what Thomas said, and the notes were then endorsed as requested, and that it was the understanding and intention of Thomas, Warfield and Keyser that Warfield and Keyser were to be liable as endorsers, and not as joint makers, then you can find for the defendant."

Now the jury might read this last instruction and agree that in their belief, such was the understanding among the parties, but turning to the instructions prayed for the plaintiff, they would say, the Court tells us we must find for the plaintiff simply upon the fact of Thomas' demand for endorsements and Warfield and Keyser's yielding to that demand, unless we find that there was some other contract between Warfield and Keyser, exclusive of Thomas.

*W. Irvine Cross*, for the appellee.

When one not otherwise a party to a promissory note puts

his name on the back of it before negotiation thereof, and to secure its negotiation, he becomes liable as a joint maker in the absence of proof of a certain intention to limit his liability to that of maker. *Sullivan* v. *Violett*, 6 Gill, 181; *Ives* v. *Bosley*, 35 Md. 262; *Schroeder* v. *Turner*, 68 Md. 506. This liability will be avoided only on proof of a different understanding *of all the parties*. *Owings* v. *Baker*, 54 Md. 82; *Gisriel* v. *Burrows*, 72 Md. 366.

This would require proof of an understanding of Warfield and Keyser personally, and of the company as represented by them, and of Thomas, representing the bank, as payee. We confidently assert that there is not a shred of proof of such understanding on the part of any party.

The essence of an endorser's position is his right to notice of failure to pay by the maker. The suggestion that the treasurer of a company in charge of its promissory notes and their payment, should, when securing the discount of one of its notes, carefully stipulate that he should have notice as individual of his own failure to pay it as treasurer, is ridiculous.

No evidence whatever has been offered to show that any of the parties understood that Warfield and Keyser were assuming only an endorser's liability, and, on the contrary, the clear evidence is that both Warfield and Thomas distinctly understood the contrary. The liability of a joint maker can only be avoided by proof that all the parties had a special understanding to the contrary.

Defendant below objected to plaintiff being allowed to fill in the name of the payee, the payee being in blank. This was the basis of his first exception. Should it be necessary to quote authority on so well recognized a right, we would refer the Court to *Elliott* v. *Chesnut*, 30 Md. 562; *Condon* v. *Pearce*, 43 Md. 83; *Sittig* v. *Birkestack*, 38 Md. 158; *Boyd* v. *McCann*, 10 Md. 118; *Kunkel* v. *Spooner*, 9 Md. 462.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellants' intestate to recover one-half of the amounts paid by the appellee on two promissory

notes discounted by the Merchants National Bank of Baltimore. Each of the notes was originally in this form :

$2,500.00.　　　　　　　　　　　　July 31st, 1896.

On demand after date Maryland Mnfg. and Construction Co. promise to pay to the order of ......... twenty-five hundred dollars at Merchants National Bank. Value received.

　　　　　　　　　　S. Davies Warfield, President.

　　　　　　　　　　Henry B. Keyser, Treasurer.

Endorsed, S. Davies Warfield,

　　　　Henry B. Keyser.

Mr. Warfield was president and Mr. Keyser treasurer of the Maryland Manufacturing and Construction Company. The two notes were taken to Mr. Thomas, the president of the Merchants Bank, without any security on them. He declined to discount them unless they were endorsed by Messrs. Warfield and Keyser and they signed their names on the backs of them. They were subsequently paid by Mr. Warfield, who sued Mr. Keyser for the one-half so paid by him, and he obtained judgment for $2,836.34. Afterwards Mr. Keyser departed this life and the appellants were appointed administrators of his estate. There are three bills of exception in the record. The *first* exception was to the ruling of the Court in permitting the plaintiff, after offering his oral testimony, to insert the name of the Merchants National Bank of Baltimore as payee of the said notes; the *second* was to the refusal to grant two prayers offered by the defendant at the conclusion of the plaintiff's testimony to take the case from the jury, and the *third* was to the granting of the plaintiff's prayer and the rejection of the defendant's 1st, 2nd, 3rd and 4th prayers, offered at the end of the case. As the defendant proceeded with his testimony after the action of the Court at the conclusion of the plaintiff's case, the prayers embodied in the *second* bill of exceptions are not open for review by us. *Barabasz* v. *Kabat,* 91 Md. 53. As the principal question is the effect of the evidence as to whether Messrs. Warfield and Keyser were joint makers or endorsers (it being conceded that no notice of protest or non-payment of the notes was given), and the prayers ·

involve that, it will be more convenient to first consider the rulings presented by the *third* bill of exceptions.

There have been a number of cases decided by this Court involving what are usually spoken of as irregular endorsements. The liability of such endorser is not determined by the fixed rules of the law merchant, but it depends upon the relation he bears to the instrument and the intention of the parties thereto. 4 *Am. & Eng. Ency. of Law*, 2 ed. 488; 7 *Cyc.*, 669. Courts have differed as to the presumption of such endorsements—some had held the signers to be liable as endorsers, others as makers, sureties or guarantors, although the result of each case is largely dependent upon its own particular facts. An early case in this State was that of *Sullivan* v. *Violett*, 6 Gill, 181, in which one who had written his name on the back of a note payable to the plaintiffs or order was held to be liable as maker, but no opinion was filed. In *Ives* v. *Bosley*, 35 Md. 262, the note sued on was payable to the order of Bosley, signed by Elisha J. Guyton, and endorsed in blank by Charles T. Guyton and William M. Ives, the appellant. The plaintiff proved that the signatures were all upon the note when it was delivered to him by E. J. Guyton for the payment of the money which he then loaned to him. The defendant, Ives, offered to prove that at the time he placed his name upon the back of the note he signed it as *endorser* Upon objection the Court ruled the testimony inadmissible and that ruling was affirmed. This Court said : "The obligation of Ives, as established by the proof of the plaintiff, is clearly that of an original promisor," and after stating the facts which are in substance above mentioned, added, "These facts established by conclusion of law the responsibility of Ives as a joint maker or original promisor * * * . It is true as was urged in the argument, that the contract entered into by a blank endorsement will generally receive such a construction as will give effect to the intention of the parties, and that parol evidence will be admitted to show and explain what liabilities were intended to be assumed at the time of the transaction. * *. * If, however, the contract set up is differ-

ent from that which attaches by presumption of law, it must
be established by proof, showing that both parties, promisor
and promisee, so intended and agreed." After quoting from
*Rey* v. *Simpson*, 22 How. 341, the Court added.: "Applying
these principles to the present case, it is clear that the defend-
ant cannot avoid the liability of a joint promisor, which the
law has attached to his blank endorsement, unless he proves
a different understanding *of all the parties.*" That case was
followed in *Walz* v. *Alback*, 37 Md. 404; *Owings* v. *Baker*,
54 Md. 82; *Schroeder* v. *Turner*, 68 Md. 506; *Gisriel* v. *Bur-
rows*, 72 Md. 366; *Thompson* v. *Young*, 90 Md. 75, and other
cases.

In those cases the names of the payees were in the notes,
all of the signatures were on them before they were delivered
to the payees, and the parties were held liable as joint makers,
excepting in *Owings* v. *Baker*, and *Gisriel* v. *Burrows*, where
the testimony showed that it was the understanding and
agreement *of all the parties* to the notes that those writing
their names on the backs should only be held to the liability
of endorsers. In *Sittig* v. *Birkestack*, 38 Md. 158, the form
of the note sued on differed from those in the above-mentioned
cases in that the name of the payee was left blank. It was
signed by H. Austermuhle, and on the back were the names
of Catharine Austermuhle, Henry Sittig and Henry Birke-
stack. The latter was the holder and had loaned H. Auster-
muhle the money represented by the note. The case had
been previously tried and the judgment then obtained by the
plaintiff was reversed by this Court and a new trial awarded,
as is shown by the report of the case in 35 Md. 273. At the
first trial the attorney for Birkestack, the holder, inserted his
name as payee. In speaking of that in 38th Maryland the
Court said: "The question whether the appellant signed his
name on the note as maker was submitted to the jury by the
instructions granted and conceded; and if that was the nature
of the contract between the parties, the appellee as holder of
the note, acting in good faith, had authority to insert his name
as payee." In *Dunham* v. *Clogg*, 30 Md. 284, the note *was*

*payable* to blank order and given by the maker to one, G. D. Vaughn. The blank was filled by making it payable to the order of Stetson Vaughn, who before maturity endorsed it and the plaintiff in that case became the owner. In the course of the opinion it was said: "In the absence of fraud, the appellee having signed the note, leaving a blank for the name of the payee, the holder could fill the blank with his own name, and endorse it in blank as it was payable to order, which would give it currency, by simple delivery, and the possession of it in such case would be *prima facie* evidence of title, enabling the holder to sue in his own name. *The same effect is given to the note, under such circumstances, as if it had been made payable to bearer.*" In *Boyd* v. *McCann,* 10 Md. 118, it was said that the holder of a note payable to *blank* order could fill it up with his own name as payee and other cases might be cited to show how such a note is regarded in this State. So far as the prayers are concerned (which we are now considering), we do not think the fact that the name of the payee in these notes was left blank distinguishes this case from those of *Ives* v. *Bosley* and others above cited. While the bank was the holder of the notes it undoubtedly had the right to insert its own name as payee, if there was no understanding to the contrary, and we do not see why the principles announced in *Ives* v. *Bosley* are not as applicable to notes held by the bank in which it had the right to insert its name, as if it had been actually so inserted.

The plaintiff's prayer, which was granted, submitted to the jury to find amongst other things that the defendant presented the notes to Mr. Thomas, the president of the bank, "and that said Thomas said that he would not discount said notes unless they were endorsed by the plaintiff, Warfield, and the defend-ant, Keyser, and that the defendant then took said notes to said plaintiff and reported to him what said Thomas had said, and said plaintiff and said defendant then wrote their respec-tive names upon the back of each of said notes, and that there was no other agreement, contract or understanding, or inten-tion between said plaintiff and said defendant at that time, and

that said defendant thereupon took said notes immediately back to said Thomas, and they. were discounted by the bank for the credit of said Maryland Manufacturing and Construction Company," and further find that the plaintiff has made the payments testified to on account of said notes, etc., then the plaintiff is entitled to recover the half of each payment, etc. We do not find any error in that prayer of which the appellants can complain. What is said in *Ives* v. *Bosley* can be repeated here, with change of names of the parties—"These facts establish by conclusion of law the responsibility of Warfield and Keyser as joint makers or original promisors." Then after saying that parol evidence is admissible to show and explain what liabilities were intended to be assumed, the Court added, "If, however, the contract set up *is different from that which attaches by presumption of law, it must be established by proof showing that both parties, promisor and promisee, so intended and ageeed."* The theory of the plainliff's prayer is that when a third person writes his name on the back of a note such as this before it was delivered, the law declares him liable as a joint maker, unless there was some agreement, contract, understanding or intention of the parties that his responsibility should be something else—that of endorser, for example. If this had been a suit of the bank against Messrs. Warfield and Keyser, then of course such an agreement, contract or understanding, must have been between *all* of them, but as it is simply a suit between these two, we do not see how the defendant could have been prejudiced by the terms used in this prayer, for if the jury had found that Messrs. Warfield and Keyser had had some understanding, or intended that they should only be responsible as endorsers, the qualification used would have enabled the jury to have found for the defendant without finding that they had such arrangement with the bank. The defendant's sixth prayer, which was granted, is the converse of this part of the plaintiff's prayer, excepting it submitted to the jury the question of the understanding and the intention of *the three* parties. There was no reversible error in granting the plaintiff's prayer, although the reference

to the agreement, etc., might perhaps have been more clearly stated.

The defendant's 1st, 2nd, 3rd and 4th prayers, which were rejected, can be considered together. They were based on the theory that there was no evidence to show that Messrs. Warfield and Keyser were joint makers, but we cannot assent to that. It is true they spoke about "endorsers," "endorsements," etc., but it is manifest that they did not use the terms in a technical sense. Mr. Thomas, for example, replied to a question whether anything was said about their being joint makers of the notes, "I said I wished them to guarantee the notes, that was my expression, I wanted them to endorse them, my idea was I wanted them to guarantee the notes." Again he was asked, "You had in mind they should guarantee them?" and he replied, "I said I want a guarantee to this, the idea being that the officials of the corporation, if you have their personal endorsement on the note, they are more apt to see it paid at maturity." It is therefore perfectly clear that he was not using the terms "guarantee," "endorser," or "endorsement" in a technical way, but he wanted *security* for the bank. All three of these gentlemen were intelligent business men, but there is nothing to indicate that Messrs. Warfield and Keyser intended to limit their liability by any particular method of becoming security, other than what they adopted, which under the law was as joint makers, in the absence of some other understanding or intention. All of them doubtless know that the usual way to make themselves endorsers, in a technical sense, was to make the notes payable to their joint order, and then write their names on the back, or payable to the order of the maker and then let it endorse them first. But they did not make themselves or the company payee, and simply put their signatures on the back and apparently left the rest to the bank. The inference might be drawn that Mr. Thomas did not look upon them as endorsers, in the strict sense, for if he had, he would doubtless have taken some steps to have made demand for payment within a reasonable time, and to have protested the notes, or have them

waive protest. It cannot therefore be said that there was no evidence that they were joint makers and we are of the opinion the lower Court was right in rejecting these prayers of the defendant and in submitting the question to the jury.

This brings us to the consideration of the *first* exception. In the ruling therein presented we think there was error. The real controversy in the case was whether Messrs. Warfield and Keyser were joint makers or endorsers—if the former, they were liable without protest and notice, but if the latter Mr. Keyser was not liable, as it is not pretended that he received such notice as an endorser is entitled to. If the understanding and the intention of the parties were that their liability should be that of endorsers, then the bank could have inserted their names as payees, while if it was understood that the bank should be the payee the presumption of law was that they were makers. To permit the plaintiff at the end of his case to insert the name of the bank and show the notes to the jury would necessarily, it seems to us, be calculated to prejudice or at least mislead the jury. There was no necessity to fill up the blank. The suit was not on the notes, but was to recover one-half of the money paid by the plaintiff on them, and they were used with the other evidence to show what relation the plaintiff and defendant bore towards them. It was not a suit of a holder of a note against one primarily liable to him, but it was wholly on the theory that the plaintiff and defendant were co-sureties, as joint makers, and as the plaintiff had paid the whole debt, he sued the defendant for contribution. Such being the case, we are not aware of any authority that authorized the plaintiff to insert the name of the bank as payee of the notes after he got possession of them, but especially in the presence of the jury after the controversy had been raised before them as to what relation he and the defendant bore to the notes.

We are not unmindful of such cases as *Kunkel* v. *Spooner,* 9 Md. 426; *Boyd* v. *McCann,* 10 Md. 118; *Dunham* v. *Clogg,* 30 Md. 248; *Elliott* v. *Chesnut,* 30 Md. 562; *Sittig* v. *Birkestack,* 38 Md. 158 and *Condon* v. *Pearce,* 43 Md. 83 (most of

which we have cited above) authorizing the holders of notes
to fill in blanks with the names of the payees, or other proper
entries.   But they were cases in which suits were brought on
notes against those primarily liable—such as makers or pre-
vious endorsers sued by subsequent endorsers, holders or en-
dorsees.   In such a case the holder of a note has, to quote
from *Elliott* v. *Chesnut,* "a very large authority to fill up the
blanks in the body of the note," but in the one now before us
the plaintiff took up the notes after maturity as one of the
joint makers, according to his contention.   When he did so,
the name of the payee was blank, and after offering testimony
to establish his theory he was permitted by the Court to in-
sert a name which it seems to us might readily, if not neces-
sarily, mislead the jury and prejudice the defendant, who was
contending for a position that would be weakened, if not over-
come, by the fact that the Court then permitted the plaintiff
to give the note a form which *prima facie,* at least, sustained
the plaintiff's contention.   For this error the judgment must
be reversed.

> *Judgment reversed and new trial
> awarded, the appellee to pay the
> costs.*

(Decided November 30th, 1904 )