LESTER v. HUTSON. (No. 902.)*

(Court of Civil Appeals of Texas. Amarillo. Feb. 9, 1916. Rehearing Denied March 1, 1916.)

1. EVIDENCE ☞265(1)—ADMISSIONS—DENIAL.

There is no rule which prevents a party from denying testimony of admissions alleged to have been made by him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1029, 1043, 1044, 1046; Dec. Dig. ☞265(1).]

2. EVIDENCE ☞265 (18) — ADMISSIONS — WEIGHT.

Admissions of a party as to a transaction are especially valuable in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1050; Dec. Dig. ☞265(18).]

3. WITNESSES ☞159(3) — COMPETENCY — "TRANSACTION WITH DECEASED."

A denial by an interested party that he had a certain "transaction with deceased" is evidence of a transaction, and inadmissible under Rev. St. 1911, art. 3690, prohibiting testimony of transactions with persons deceased.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 609; Dec. Dig. ☞159(3).

For other definitions, see Words and Phrases, First and Second Series, Transaction.]

4. VENDOR AND PURCHASER ☞208—MUTUAL RIGHTS — NECESSITY OF WRITTEN AGREEMENT.

Where the vendor, under an option contract for the sale of land, disposed of certain parcels within the term of the option, it was immaterial that there was no specific agreement to turn over to the option holder the amounts so derived, since the proceeds in equity belonged to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 424; Dec. Dig. ☞208.]

5. APPEAL AND ERROR ☞1056(2)—HARMLESS ERROR.

Exclusion of testimony as to transactions of party interested with deceased and as to the existence of agreement between such parties held harmless, where its admission would not have benefited the defendant, who sought to introduce it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4188; Dec. Dig. ☞1056(2).]

6. WITNESSES ☞159(1)—TRANSACTIONS WITH DECEASED—REPRESENTATIVE CAPACITY.

That a transaction with deceased was had in his representative capacity for a corporation does not affect the rule as to admission of testimony regarding it, since it is nevertheless a transaction with one deceased, which is always inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666; Dec. Dig. ☞159(1).]

7. APPEAL AND ERROR ☞1067 — HARMLESS ERROR—INSTRUCTIONS.

Error cannot be predicated on the refusal to instruct against liability of the defendant if the contract terminated on a certain date and was not renewed, where the evidence conclusively established that the contract was renewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

8. TRIAL ☞194(13)—VENDOR AND PURCHASER ☞352—OPTIONS—RIGHT TO BENEFITS—INSTRUCTIONS.

Instruction on right of the holder of an option to purchase land to have sums received

---

from sale to other persons applied on his debt *held* not on the weight of evidence, nor calculated to confuse.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 462; Dec. Dig. ☞194(13); Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ☞ 352.]

9. ALTERATION OF INSTRUMENTS ☞29—INTERLINEATIONS—VALIDITY—EVIDENCE.

Evidence *held* to show that interlineations in a contract were made by the defendant, who denied it, and were of date concurrent with the contract.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 259-263; Dec. Dig. ☞29.]

10. TRIAL ☞194(13), 240—VENDOR AND PURCHASER ☞352 — OPTION CONTRACTS — POSSESSION BY OPTIONEE—CHARACTER OF POSSESSION.

Instruction in action on an option contract of sale *held* not argumentative, ambiguous, or upon the weight of evidence on the issue whether the holder of the option held as a special tenant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 462, 561; Dec. Dig. ☞194(13), 240; Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ☞352.]

11. VENDOR AND PURCHASER ☞352—OPTIONS—POSSESSION BY OPTIONEE—EVIDENCE.

Evidence *held* to justify the submission of an instruction on the character of the tenancy of the plaintiff's predecessor in interest as a special tenancy.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ☞ 352.]

12. APPEAL AND ERROR ☞742(1)—REVIEW—PROVINCE OF COURT.

Where a proposition under an assignment of error is insufficient, the court, on appeal, cannot reframe it to make it fit the record in order to properly present the issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742(1).]

13. APPEAL AND ERROR ☞690(1)—REVIEW—EXCLUSION OF EVIDENCE—SUFFICIENCY OF EXCEPTIONS.

A bill of exceptions to the exclusion of evidence, reciting merely what the evidence would have been, is insufficient, where it fails to show the materiality of the testimony, which is apparently unconnected with the issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897, 2904; Dec. Dig. ☞ 690(1).]

14. APPEAL AND ERROR ☞273(5)—PRESERVATION OF EXCEPTIONS—GENERAL EXCEPTIONS.

Where an instruction embodies several propositions of law, some of which are accurate and not subject to objection, a general exception is insufficient to raise the propriety of a particular portion of the instruction.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞273(5); Trial, Cent. Dig. § 689.]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by Mrs. Kathryn Hutson, administratrix with the will annexed of John Hutson, deceased, against L. T. Lester. Judgment for plaintiff on remand after appeal, and defendant appeals. Affirmed.

See, also, 167 S. W. 321.

Turner & Rollins and Reeder & Dooley, all of Amarillo, and G. W. Barcus, of Waco, for appellant. Carl Gilliland, of Hereford, and Madden, Trulove, Ryburn & Pipkin and W. H. Kimbrough, all of Amarillo, for appellee.

HENDRICKS, J. The plaintiff, Hutson, as administratrix, alleged the execution and delivery by Lester to her deceased husband, John Hutson, of the following instrument:

"Canyon, Texas, January 8, 1907. "State of Texas, County of Randall.

"I, L. T. Lester, agree to sell to John Hutson, or order, sections 11, Blk. K 14, B. S. & F. Cert. No. 127; 15, block K 14, J. Gibson Cert. No. 129; 17, Blk. K 14, B. S. & F. Cert. No. 1/51—all these sections are located in Deaf Smith Co., Texas.

"Also section 11, Blk. 1, T. T. R. R. Co. Cert. No. 54; also section 12, Blk. 1, T. T. R. R. Co. Cert. 54—both situated in Randall county, Texas.

"Upon the said John Hutson paying me the sum of $8,106.67, and balance due on said sections with accrued interest and other expenses, with 8% interest from date.

"This agreement to hold good until September the 12th, 1907.

"Witness my hand this the 8th day of January, 1907.        [Signed] L. T. Lester."

Plaintiff also averred a supplementary agreement of extension and modification of the above contract; also charging Lester with the sale by him as the possessor of the legal title of a considerable portion of the land embraced in said contract; that he was trustee for Hutson; alleging, further, the assertion of claim of title by the defendant, Lester, constituting a cloud upon the title; praying for an accounting, and that the cloud be removed.

Plaintiff's petition, in its essentials, is thoroughly reproduced in the former opinion of Chief Justice Huff, on a former appeal to this court, and reported as Lester v. Hutson, 167 S. W. 324.

The questions involving Lester's plea of privilege to be sued in the county of his residence, his general demurrer, asserting the proposition that the plaintiff's pleading fails to show such an equitable title as that an action to remove cloud could be maintained, also advancing the subsidiary proposition that the above contract was merely an option, and supplementing this with the contention that the petition is, or should be, one of specific performance, further claiming that the alleged supplementary contract is within the statute of frauds, all of which were thoroughly discussed in the former opinion.

Before discussing any of the remaining assignments we set out the following evidence, and submit the following conclusions: It is undisputed that the contract of January 8, 1907, was executed and delivered by Lester to John Hutson; that as late as July, 1910, and at different times prior thereto, and to different persons, Hutson made claim to a portion of the property embraced in said contract; that subsequent to said contract

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and the date, on its face, of its expiration, Hutson assumed actual possession of a portion of said land, cultivated the same, and placed thereupon certain improvements; that there is no formal contract of relinquishment to Lester by Hutson of the land.

Referable to the question of an actual extension of this contract, the following testimony, by one J. M. Edelen, engaged· in the commission and loan business at Kansas City, Mo., is reproduced:

"I knew John Hutson intimately for 10 years prior to his death. He sought to secure a loan from me on two occasions, in the year 1910 on a tract of 1½ sections of land known as Mr. Hutson's Palo Duro ranch, situated partly in Deaf Smith and partly in Randall county, Tex. This occurred some time in April or May, 1910, and again in July of the same year. He stated to me that he owned both the Palo Duro and the Tierra Blanca ranches, and wished to borrow money for himself. I had a conversation with Mr. Lester, the defendant in this case, relative to his interest in these lands. This occurred after the death of Mr. Hutson and some time in the fall of 1911, in the Amarillo Hotel, at Amarillo, Tex. He asked me whether or not I had been shown the lands by Mr. Hutson, for the purpose of making a loan on the land. * * * He asked me the amount of the loan and the purpose for which Mr. Hutson stated he wanted the loan. I stated to him that Mr. Hutson wanted $9,500, of which he wished $8,-500 to pay him, Mr. Lester, for the balance of the purchase price of the land, and the balance for some personal use, which he did not tell about. [This last statement was admitted by the court 'for the limited purpose of showing what the witness stated to Lester, and not for the purpose of proving the statement of Hutson to be true.'] * * * Mr. Lester stated to me that he had previously sold the land, offered me as security for a loan by Mr. Hutson, to Mr. Hutson, under a written contract of sale; that the time for the final payment for the lands under the terms of the contract had expired at the time Mr. Hutson had shown the lands to me. * * * That he had agreed that Mr. Hutson might keep the land after the time had expired, on condition that he pay the balance of the purchase money due, as provided in the contract, * * * and that he had urged Mr. Hutson to make the payment."

From the testimony of D. A. Parks, cashier of the bank of which Lester is president, it is undisputed that subsequent to the date of the alleged maturity of the contract on its face, Lester and Hutson had under consideration a matter of settlement with reference to said lands, and in the fall of 1909 a statement, purporting to show how the matter stood, was made up by Mr. Parks and handed to Hutson, with details of the purchase price, interest, taxes, the amounts which certain portions of the land had brought, on account of certain sales made by Lester, and mentioning real estate commissions. It is really undisputed, perforce of succeeding circumstances, after the date of the contract as exhibited in this record, that Hutson accepted the contract of January, 1907.

[1] The testimony of Edelen, in regard to the statements of Lester, are undenied by the latter. It is clearly inferable from the admissions of Lester that at least to July, 1910, he, had extended the time, and had permitted Hutson to remain in possession of a part of the land under the contract. There was no legal obstacle to a denial by Lester, if the above statements could have been truthfully denied. Wells v. Hobbs, 57 Tex. Civ. App. 380, 122 S. W. 451.

[2] Jones in his late work on Evidence, in commenting upon the weight of admissions as testimony, says:

"It presents itself to us as evidence of high value, when thoroughly established, for it is of that nature which may successfully challenge contradiction when effectively proved. What the party himself has said or done, at a time when the litigation perhaps was not thought of, if the certainty of it is established, having regard to the circumstances of time, place, and person, should, and often does, furnish a substantial reason for his defeat, when a trial discloses his case founded on facts inconsistent with those which he has himself adopted, and to which he has given publication." Volume 2, § 236, bottom page 358 and top page 359.

In view of the record in this case, many of appellant's assignments of error, if we were to even consider a review of some of the questions as legal propositions which we are not disposed to do, are devitalized to such an extent that no error could be shown.

[3] It is urged that Lester should have been permitted to testify that the written contract of January 8, 1907, was not extended, and that a denial of the alleged transaction with a deceased person is not within the purview of Rev. St. art. 3690. Appellant cites Adam v. Sanger, 77 S. W. 954, and other decisions by the courts of other jurisdictions. This court, on the former appeal, citing Jones on Evidence, § 785, said the courts have interpreted the term "transaction" as the justice of each case demanded, rather than one of abstract definition. It was further said that the agreement of sale was in writing, and under appellee's contention, as evidenced by the improvements, with Hutson's possession, and Lester's admissions, and the latter's conduct, an agreement of extension was shown; that a denial of a contract of extension would be a negation of some arrangement, or implied agreement, manifested by the above facts, and that such testimony would, in reality, be relative to a transaction with the deceased. The case of Raison's Adm'x v. Steele (Ky.) 29 S. W. 454, is rather in accord with this line of reasoning, and the case of Blount v. Blount, 158 Ala. 242, 48 South. 581, 21 L. R. A. (N. S.) 755, 17 Ann. Cas. 392, cited by appellant, though upholding the negative testimony in that case, assumes the peculiar position that such testimony was not admissible, as a denial, where it is shown that the party did have a transaction with the decedent; also saying that such testimony may or may not involve a transaction with the deceased, and whether it does or not depends upon the particular circumstances of each case. We are not pretending to assert where the line should be drawn; there is force in the argument of ·the Alabama case upon other fea-

tures, as to plea of non est factum, but there is some consideration as to the other view. Suppose the handwriting of a grantor cannot be proven by accessible undisputed handwriting documents—the notary and grantee are dead, and the latter has gone into possession, ostensibly, under such a deed, placed valuable improvements upon the land, and the heirs are confronted with the testimony of the grantor, denying that he ever signed such a deed, and makes no attempt whatever by witnesses to show the handwriting was different from his signature. Would the invocation of the rule be then permissible on account of the "peculiar circumstances" of the case? The case of Adam v. Sanger, 77 S. W. 954, on account of the turn of the decision, was not approved by the Supreme Court, at least it was not necessary to approve it, and it is in reality in conflict with Edelstein v. Brown, 95 S. W. 1128. The notes and citations to the opinion of Blount v. Blount, in the L. R. A. volume, present numerous cases on this question.

[4] The forty-third assignment raises the further question that Lester should have been permitted to testify that he had no agreement with Hutson for the sale of the land in parcels and as to the application of the proceeds of said sale. If the extension, however, actually occurred, and the contract was in force, an actual agreement was unnecessary. The proceeds in equity belong to Hutson.

[5] In regard to the offered testimony of Lester, denying any contract of extension, this court also said, in the former opinion, that such a denial, under the conditions, would have been a conclusion, on the theory that an implied agreement of extension could be inferred from the act, admissions, and manifestations stated, and to rebut this, by statement that no agreement was ever made, the testimony as offered would reach such conditions, in its effect, as a denial, and in that sense the testimony was a conclusion. There is force in all these suggestions, though unnecessary to decide on this appeal, for, if such testimony had been permitted, in the face of the record and conclusions derivable therefrom, we are unable to see how it would have benefited Lester in the slightest. The conclusion that some character of arrangement for an extension of the particular contract is so cogent that the loss of that character of testimony to the jury did not injure him.

[6] The forty-second assignment raises the further question that the court erred in sustaining the objection of the plaintiff to the question propounded to the defendant, Lester, to which the answer would have been that said defendant had an arrangement with John Hutson, as agent for the Cedar Valley Land & Cattle Company, that in consideration of the use of a part of the land said company would carry the notes executed by the defendant at 7 per cent. interest, as long as Hutson or the company were permitted to use the land. The point is not made, as in the forty-first assignment (noticed later), that the plaintiff had called Lester to testify, but it is urged by proposition that testimony concerning a transaction with Hutson, as agent of the Cedar Valley Land & Cattle Company, would not be such a transaction with Hutson as would come within the exclusionary rule of 3690 R. S. Oklahoma has a similar statute.

The case of Cunningham, Adm'r, v. Phillips, 4 Okl. 169, 44 Pac. 221, by the Supreme Court of Oklahoma, in its essential elements, affords a strong analogy. Phillips in his suit against the administrator claimed that, when Berger, the deceased, purchased the land in controversy, the deceased was his tenant, and such status constituted Berger his trustee, praying that the administrator execute a deed. The plaintiff, Phillips, was allowed to testify to the making of a lease with Berger, the loss of the same by himself, the contents of said lease, and the payment of rent by Berger. The court said:

"This testimony constituted a very important and material part of the evidence produced in behalf of the plaintiff. * * * It is impossible to conclude, after a careful examination of the evidence in the case, that, if the testimony had been excluded as provided by the statute, the finding and judgment could have been rendered in his behalf."

To testify to a transaction which, by its force, would destroy plaintiff's case is certainly within the spirit of the statute, and the same was enacted to prevent such a result when the other party cannot be heard.

[7] The trial court charged the jury, in substance, that if they should believe from the evidence that Hutson failed to comply with the requirements of the contract of January, 1907, on, or before September 12, 1907, the defendant was entitled to cancel and rescind same, unless they further believed that defendant failed to rescind, and instead of rescinding continued to recognize the contract as in force, and permitted Hutson, without objection, to take possession of the lands, etc. The complaint is made that this charge is erroneous for the reason that under the terms of the contract, requiring Hutson to comply, on or before September 12, 1907, "the contract would (of itself) on said date terminate and become null and void unless it had been extended by a positive agreement on the part of the defendant." If error, it is not available. It is conclusive that Lester did extend, and Hutson acted upon the extension of, this contract. Hence, it did not terminate, of itself, on the date mentioned.

Complaint is also made, under another assignment, that this charge constitutes error, because the defendant, Lester, was not required, under the terms of the contract, to take any affirmative action with reference to the rescission. For the same reason this as-

signment is also overruled. The ninth, twelfth, and thirteenth assignments are in the same category, and are not sustained.

[8] The court instructed the jury that if they believed the agreement of January 8, 1907, was continued in force after September, 12, 1907, and that 2½ sections of the land covered by the contract were sold to third parties and the proceeds received by Lester, it was his duty, as the trustee of the legal title, to apply the proceeds to the payment of the sums which Hutson was obliged to pay, including interest and reasonable expenses, and if Lester failed to apply them, the law would treat such proceeds received by Lester as applied at the respective dates when received; and this would be true whether there was any express contract to that effect, since it would be the duty of Lester to apply, and the right of Hutson to receive, such proceeds upon said contract, if it had been continued in force to the time of the sales and the receipt of the proceeds.

The fourth proposition under appellant's twenty-first assignment of error is not embraced within his objection to this charge. We think the charge is clear, is not upon the weight of the evidence, and is not calculated to confuse, raised by another proposition, but in reality enlightens, the jury on the questions presented. If the contract was continued in force, and parts of the land were sold during the pendency of the extension, necessarily Lester was a trustee, not only of the legal title, but of the proceeds as applicable to the payment of the debt, and irrespective whether there was any express contract, or not, for the extension, so it was in force.

[9] The twenty-sixth assignment attacks the ruling of the trial court in admitting in evidence, over the objection of appellant, the contract of January 8, 1907, on the ground of an interlineation. The proposition is that before an instrument, which shows interlineations on its face, is admissible, the party offering must explain the same. The body of the bill of exceptions, the manner in which it is framed, does not, in reality, exhibit anything objectionable, but the statement of facts shows that the following language: "And balance due on said sections with accrued interest"—was interlined with ink in the original contract, and the remainder, except the signature and heading, having been typewritten. The modifications of the bill by the court state that, when the instrument was offered in evidence, it was obvious on inspection that the interlineation was in the same handwriting as the signature to the instrument; that it was in ink of the same color, and apparently the same age, as the signature; that the suit had been pending since the summer of 1911; that in none of the pleadings of the defendant had there ever been a verified plea of non est factum, nor any allegation that the instrument had been altered by any one after the defendant had attached his signature; that counsel for defendant stated, at various times during the progress of the trial, that they made no question at all of the "execution" of the instrument, or the genuineness of the defendant's signature thereto; that the case had been tried twice before in the district court at Hereford; that on both trials the same original instrument had been offered and admitted in evidence, and no objection had ever been offered to it before upon the ground of the alleged interlineation. Hutson was dead, and could not explain. The contract with the Parks memoranda attached was found in Hutson's effects at the ranch. The interlineation was evidently in Lester's handwriting and not Hutson's. The conditions recited by the court were sufficient to free the instrument of any suspicion, and appellant's authorities are inapplicable to this status.

[10, 11] The trial court charged the jury, in substance, that if they believed from the evidence that the possession of the lands mentioned in the contract of January 8, 1907, by Hutson was not under a claim of ownership, or was under a tenancy to Lester, to find for defendant, or, if they believed that after the execution of said contract Hutson abandoned the contract and became the occupant of the land as a tenant, the plaintiff would be estopped from claiming title; but if they believed from the evidence that for a special purpose, understood between Hutson and Lester, Hutson held himself out as a tenant of said Lester, and that such holding out was not intended to alter the rights of Hutson and Lester, as between themselves, and that Lester was not misled or deceived thereby to his injury, plaintiff would not then be estopped by such holding out, if any, by Hutson. In November, 1910, Lester obtained a mortgage upon a part of this property, and at that time Hutson, who was in possession of the property, disclaimed any interest in the land mortgaged except as a tenant of Lester. The fifteenth, sixteenth, seventeenth, and eighteenth assignments attack this charge from several viewpoints: That there is no evidence raising the issue that Hutson held himself out as a tenant for a special purpose; that the burden of proof was placed on the defendant to show that possession of Hutson was not under a claim of ownership, with a general complaint that it is not a correct statement of the law, and, further, that it is argumentative, ambiguous, and upon the weight of the evidence. The charge speaks for itself as to the criticisms, except the one of insufficiency of testimony permitting its submission to the jury.

When Hutson made the written acknowledgment to Herd, the agent of Post, disclaiming any interest in the land, and declaring that he was a tenant of Lester, the jury was entitled to consider the following conditions: As explanatory of his possession, Hutson had claimed the land as late as July, 1910. Prior

to the purchase of this land by Lester from the Cedar Valley Land & Cattle Company, Hutson had been the agent of that company, and continued to be until the time of his death, in January, 1911. Lester had sold several parcels of land embraced in the January contract to different parties prior to the time of the disclaimer. Negotiations for a settlement, with these sales considered, had occurred some time in 1909. Lester said that the figures on Parks' memoranda were made to see what the profits were on the land embraced in the contract. When these sales were made, Hutson, who was also an attorney in fact for the land company, had released the lien for Lester on the tracts, relative to which some of the amounts had not been paid by Lester, nor upon the original notes to the corporation. The notes, or a part at least, which Lester originally gave for all the land, were existent. The day of reckoning was to come, both for Lester and Hutson. To obtain the Post money was expedient for both parties. With a considerable amount of Hutson's debt to Lester having been paid in equity, on account of Lester's sales, the jury had the further right to consider whether Hutson, as between him and Lester, was, or not, actually eliminating his interest in the remaining land by the statement to Herd. An analysis of the testimony of the two witnesses, engaged in the real estate business, as to the declarations of Hutson, in regard to the latter's interest in the remaining land—one stating the declarations were made to him in May, 1910, and the other witness testifying that Hutson made statements to him in November or December, 1910—in connection with conditions and other testimony, could have been rejected by the jury. We think the testimony raised the question whether the disclaimer was made for a special purpose as between Hutson and Lester.

Paragraph 6 of the court's main charge presents a similar question, upon the matter of disclaimer, as well as to the execution of some releases of the vendor's lien to Lester, executed by Hutson (for Herd's benefit) as agent of the Cedar Valley Land & Cattle Company, at the time Herd loaned the money to Lester, submitted as estoppel. The nineteenth assignment complains of this paragraph that there is no evidence to sustain such a charge, and that it detracts from the weight to the jury of the disclaimer. For the reasons above, we overrule said assignment.

[12] The twenty-eighth assignment of error complains of the admission in evidence of the deeds from L. T. Lester, to the several persons (the grantees in said deeds). The only proposition under said assignment which we think necessary to notice asserts that:

"The deeds should have been excluded because there is no evidence that the consideration recited in said respective deeds was the true consideration."

184 S.W.—18

This proposition, in its broad presentation, with no statement under it, in view of the record, should not be sustained by this court. We are not required to reframe a proposition in accordance with, and make it fit, the actual record, nor to make a statement of the testimony which the brief should append, for the purpose of elucidating the actual point, if one exists. Lester did testify, however, as to some of the deeds, when interrogated about them, and said that they did recite the true consideration, without any question asked, nor statement by him, as to the other deeds.

[13] The forty-first assignment raises the question that because appellant was called by appellee, as a witness, by taking his oral deposition, such offered testimony, when Lester was upon the stand, should have been admitted on the direct examination by his counsel, as follows:

"Q. Mr. Lester, state to the jury whether or not you were paid any lease or rents for section 11 and the north half of section 12, in Randall county, during the time Mr. Hutson was in possession of it."

The bill merely recites:

"If the witness had been permitted to answer such question, he would have answered in the affirmative."

"Under well-settled rules it must be made to appear in a bill of exceptions taken to the exclusion of evidence what the evidence was, and that its exclusion may have influenced the judgment." Holstein v. Adams, 72 Tex. 490, 10 S. W. 562.

This bill, though it shows the answer, does not undertake to show the connection, or, in reality, the materiality, of the testimony. The mere statement by Lester, that he was paid rents for the land during the time Hutson was in possession would leave its materiality suspended. The bill should have gone further and shown, notwithstanding the nature of the objections in the same, that this testimony could, and would, have been followed by other testimony, and showing in what manner Hutson would have been affected. The mere general statement by Lester that he was paid rents during the time of Hutson's possession would suspend its materiality—paid by whom, and what contractual connection would Hutson have had with the payment? It is unnecessary in this view to discuss the legal questions raised under this assignment.

[14] The twenty-third assignment of error attacks the eighth paragraph of the court's main charge, which is a full submission to the jury of the principles of accounting between Lester and Hutson, in many details, according to the trial court's view, in the event the jury found for Hutson. The exception to the charge is a general exception, "because the testimony raised no such issue"; and the proposition to the assignment is:

"It was error * * * to submit the matter of an accounting, inasmuch as there is no evidence in the record showing, or tending to show, the propriety of such accounting."

If the jury found for plaintiff, the testimony certainly raised an accounting of some character between Lester and Hutson, and defendant does not object to the method submitted by the court of stating the account, nor any suggestion that the trial court was in error in stating the principles of accounting. This particular charge has many subparagraphs, and the trial court seems to have covered every conceivable detail arising upon the record, as to the manner of the charges and the application of credits, applying subsidiary principles applicable to different matters of such debits and credits.

As to many of the principles applicable to particular accounts in certain portions of the record, there can be no question but what the testimony raises those particular issues. The Supreme Court of the United States, in Railway Co. v. Earnest, 229 U. S. 122, 33 Sup. Ct. 657, 57 L. Ed. 1096, Ann. Cas. 1914C, 172, said:

"We must * * * apply the rule that where an instruction embodies several propositions of law, to some of which no objection properly could be taken, a general exception to the entire instruction will not entitle the exceptor to take advantage of a mistake or error in some single or minor proposition therein."

The thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, and thirty-seventh assignments of error assail the action of the court in admitting the testimony of the different witnesses as to declarations of Hutson of ownership of the land. This court in the former opinion (167 S. W. pages 328, 329, 330) discussed thoroughly this character of testimony, announcing the limitations of purpose for which said testimony could be used, and further discussion is unnecessary. The trial court conformed the use of the testimony to that holding.

Other assignments in this brief are disposed of by the reasons adduced above, except certain matters which we think unnecessary to discuss.

The judgment is affirmed.