JONES, Executor *v.* SELVAGGI ET AL.

[No. 142, September Term, 1957.]

 

2

4

*Decided March 3, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Joseph I. Huesman* for the appellant.

*H. Ross Black, Jr.,* and *Nevin E. Leese,* with whom were *Rome & Rome* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

The appellant, as the executor of the estate of Louis Weinman, filed a bill of complaint in the Circuit Court for Baltimore City by which he sought to recover from the appellees the sum of $14,996.15, which had been transferred to the appellee, Margaret Selvaggi, in two separate transactions by the appellant's decedent prior to his decease. From a decree that dismissed his bill of complaint, the executor has appealed.

Louis Weinman, a widower, died testate at his residence in Baltimore on July 2, 1955, at the age of 80 years. He had been ill since May 28th of that year, when he suffered a heart attack, and was confined to his home during his last illness where he was treated, until his death, by Dr. Polek. His wife had passed away in 1952, and thereafter he lived alone. He had no relatives; but his wife had left several nieces and nephews who survived him. During the period of the decedent's last illness, which lasted 36 days, he was confined entirely to his bed for the first three weeks except to go to the bathroom, and after that he was permitted to be up and around during portions of the days. During these last days, Mr. Weinman was cared for, almost entirely, by the appellee, Mrs. Selvaggi, who lived close by with her husband, James, the other appellee. The Selvaggis were not related to the decedent, but had known him for about ten years. They attended the same church, and after Mrs. Weinman died in 1952, Mrs. Selvaggi performed many acts of kindness for Mr. Weinman, such as preparing his meals and taking him for automobile rides, etc. She had a key to his home and admitted those who had occasion to want to see him. She called the doctor when he needed medical care, and apparently, was the only one who displayed any serious interest in his welfare outside of his doctor. None of his wife's nieces or nephews, who were the beneficiaries under his will, visited him during his illness, and only one attended Mrs. Weinman's funeral.

Mr. Weinman had accumulated an estate, which was worth approximately $60,000.00. He had $6,437.10 thereof in a savings account in the Eutaw Savings Bank. On June 1,

1955, Weinman, by an order written in his own handwriting and signed by him, directed the bank to pay all of this account to Mrs. Selvaggi except $200.00, which the bank did when she presented the order and the account book. He also had $8,759.05 in a savings account in the Savings Bank of Baltimore. On or about June 20, 1955, an officer of this bank received a telephone call from Mrs. Selvaggi requesting that this money be transferred into her name and Weinman's, subject to the order of Weinman only, with the balance payable on the death of either to the survivor. The officer filled out a transfer order on one of the bank's forms, and mailed it to Mrs. Selvaggi. The order, signed by Weinman and accompanied by the pass book, was returned by mail to the bank. The old account was closed and a new joint account opened as directed. After Weinman's death, Mrs. Selvaggi closed this account and withdrew all the money contained therein.

She deposited $4,000.00 of the money received from the first account in a joint savings account with her husband, and all of the money obtained from the second in another similar savings account.

Four envelopes in which Weinman had placed money were introduced into evidence. On the outside of these envelopes, Weinman, in his own handwriting, had left instructions to Mrs. Selvaggi directing her as to what to do with the money. Two of them related to religious associations, one to his funeral expenses, and the other to the inscription to be placed upon his tombstone. One was dated in April, 1953, which indicated that at least as early as that time, he had confidence in Mrs. Selvaggi and expected her to take care of some of the necessary details after his decease.

The executor was not satisfied that the transfers to Mrs. Selvaggi were lawful; so he brought suit against Mr. and Mrs. Selvaggi and others to recover the money. At the conclusion of the appellant's testimony the chancellor granted a motion to dismiss as to the appellee, Mr. Selvaggi, and, at the conclusion of all of the testimony, signed an order which dismissed the bill of complaint as to the other defendants. From this order, the executor has appealed.

I

The chancellor dismissed Mr. Selvaggi as a defendant on the theory that no confidential relationship had been shown between Weinman and Selvaggi. The appellant contends this was reversible error; that Mrs. Selvaggi, in her contacts with the decedent was acting not only for herself but as agent for her husband; that as the evidence disclosed a confidential relationship between Weinman and Mrs. Selvaggi, it also existed as to her principal, Mr. Selvaggi; and he should not have been released as a party. This argument is thin, far-fetched and unsound. No fraud, collusion or conspiracy was established on the part of the Selvaggis to obtain Weinman's money. Even if Mrs. Selvaggi were the agent of her husband in her dealings with Weinman, Weinman did not, at any time, give any money to Mr. Selvaggi, or to Mrs. Selvaggi for and on behalf of Mr. Selvaggi. The money was given to Mrs. Selvaggi. Mr. Selvaggi's only claim to the same is by gift from his wife, as a result of her depositing it in the joint bank accounts. There was therefore no error in dismissing him for this reason.

There was, however, error in dismissing him for another reason. The bill of complaint prayed that the money in the joint savings accounts of Mr. and Mrs. Selvaggi be impressed with a trust in favor of Weinman's estate. If Mrs. Selvaggi wrongfully obtained the money, she had no right to give it to her husband, and the chancellor would have had a right and duty to impress the bank accounts with a trust; but the chancellor could not affect Mr. Selvaggi's interest in the accounts unless Selvaggi were a party to the suit. He was therefore a necessary party and should not have been dismissed until such time as Mrs. Selvaggi was also dismissed. His dismissal, however, was not prejudicial; because, if we exclude all of his testimony which he was permitted to give after his dismissal as a party that was inadmissible under section 3 of Article 35 of the Code (1951) because he was a party, there still remains sufficient evidence to sustain the chancellor's findings.

## II

The next claim made by the appellant is that the burden of proof was on the appellees to show that Weinman was mentally competent and fully understood the nature of the transfers of his money, and the evidence produced was insufficient to warrant such findings by the chancellor. If we assume, without deciding, that the onus was upon the appellees to show that Weinman was mentally competent, we think there is ample evidence to sustain the chancellor's finding in this respect, and that the decedent fully understood the nature of the transfers. The attending physician, produced by the appellant, testified that, in his opinion, Weinman was mentally competent. Mrs. Woodrow and Mrs. Lage, neighbors, who saw him shortly before his death and were, also, produced by the appellant, testified to the same general effect. Mr. Jones, the appellant, who last saw Weinman alive in April, 1955, stated that he seemed mentally competent and capable of executing a valid deed, gift or will. This mental condition was confirmed by Mrs. Novak, another neighbor, and Mr. Hentschel, a life-long friend of Weinman. The parol evidence was strengthened by his directions written in his own handwriting, with reference to the first account, and his retaining control over the second during his life. There was no evidence relative to his mental condition offered in opposition to the above. We hold the chancellor was clearly justified in his finding that the deceased was mentally competent and fully understood the nature of the transfers. Cf. *Masius v. Wilson,* 213 Md. 259, 131 A. 2d 484.

## III

The appellant further claims that as a confidential relationship existed between the decedent and Mrs. Selvaggi, the appellees failed to produce sufficient evidence to support the chancellor's findings: (a) that the transfers of Weinman's money to Mrs. Selvaggi were his deliberate and voluntary acts; (b) that the transfers were fair, proper and reasonable under the circumstances; and (c) that Weinman intended to make a gift of his money to Mrs. Selvaggi.

The chancellor found that a confidential relationship existed between Weinman and Mrs. Selvaggi; so we shall assume, without deciding, that was correct. In the case of *Hancock v. Savings Bank of Baltimore,* 199 Md. 163, 85 A. 2d 770, this Court, in the majority opinion, pointed out that where a confidential relationship existed, the burden is placed upon the dominant party to show that the transaction was fair and reasonable; and the minority opinion contended that, in addition to showing the transactions fair and reasonable, the dominant party must show that the transferor was fully informed and clearly understood the legal import of the paper signed. Cf. *Almond v. McAllister,* 202 Md. 411, 416, 417, 96 A. 2d 609. Even measured by the latter test, we think the transfers in the instant case should be sustained. Here we had a transferor, who had a total savings of nearly $60,000.00, with no relatives. Nieces and nephews of his deceased wife, who paid him little or no heed, were the beneficiaries under his will. For years, Mrs. Selvaggi had rendered him favors and bestowed upon him many kindnesses. In his last illness, she was the only one to whom he could turn for willing help, and her assistance was given until the end. These facts create a strong inference that he desired to reward her. The outright gift of the $6,000.00 and the change of the other account so that she would receive it at his death, under the above circumstances, we think were fair and reasonable. What we said in II shows that he was fully informed and understood the legal import of the papers signed. The chancellor saw and heard the witnesses testify, and found further that the evidence was sufficient to show definitely an intent upon the part of Weinman to make gifts of the two bank accounts to Mrs. Selvaggi. There was no evidence of any kind that Weinman was ever importuned to make the transfers, or that any undue influence was exerted upon him at any time. After carefully considering all of the evidence, we are unable to say that the chancellor was clearly wrong. We therefore hold that he was correct in dismissing the bill of complaint.

IV

There remain for consideration several rulings of the

chancellor on the admissibility of evidence. The appellant objected to the four envelopes, mentioned above, that were admitted into evidence. These envelopes contained instructions in Weinman's own handwriting telling Mrs. Selvaggi what to do with the money in each after his demise. We think the first three were admissible, under the circumstances of this case, to aid in establishing the relationship that existed between Weinman and Mrs. Selvaggi, which was the motive that prompted him to make her the subject of his bounty. They were not self-serving declarations as was the case in *Heil v. Zahn*, 187 Md. 603, 608, 609, 51 A. 2d 174, cited by the appellant. The fourth was not admissible; because the instructions were not definitely proved to be in Weinman's handwriting, but its exclusion does not affect the result in this suit.

The appellant offered a general objection to the competency of Mr. Selvaggi. The statute, Article 35, sec. 3, does not render a party to the suit incompetent, but prohibits a party from testifying "to any transaction had with, or statement made by" the deceased. There was no error in permitting Selvaggi to testify to anything not prohibited by statute or the rules of evidence.

On cross-examination Mrs. Lage, a witness offered by the appellant, was permitted, over objection by the appellant, to testify to certain things that Mrs. Selvaggi had told her with reference to what Mrs. Selvaggi had done for Mr. Weinman. This testimony was objectionable from two angles: the statements were self-serving declarations by Mrs. Selvaggi; and, also, were statements that she could not have testified to herself, as she was a party to the suit and prohibited by the dead-man's statute from testifying to any "transaction had with" Weinman. It should be obvious that if she could not testify to these matters herself, she could not render them admissible by the simple expedient of telling them to someone else. However, they were purely cumulative in effect and their exclusion does not affect the result reached.

Mrs. Selvaggi, on direct examination, was allowed, over objection, to answer questions concerning her dealings with the decedent. These questions were propounded so as to

elicit negative answers, in order to deny certain allegations in the bill of complaint. Illustrations of the questions are: "* * * did you at any time exert on him (Weinman) any undue influence or influence of any kind?" and "Did you at any time perpetrate any fraud on Mr. Weinman?" These questions were clearly improper. The answers to them are proscribed by the statute referred to above; because such answers, necessarily, involved "transactions had with" the decedent. A witness testifies to a "transaction" no less when she denies than when she affirms a transaction with a party deceased, consequently a denial is within the inhibition of the statute as well as an affirmation. *In re Champion's Estate* (Iowa), 180 N. W. 174, 176; *Lester v. Hutson* (Tex. Civ. App.), 184 S. W. 268, 270; *Knowles v. Waller* (Del.), 78 A. 611, 612. If the answers to all of the objectionable questions to this witness be excluded, as well as those mentioned above, there still remains ample relevant and admissible evidence to sustain the chancellor's conclusions for dismissing the bill of complaint.

*Decree affirmed, with costs.*