IRVINE KEYSER ET AL., ADMRS., vs. S. DAVIES WARFIELD.

*Endorsement of Promissory Note by Third Parties Before Delivery— Payment of Note by One Co-maker—Competency of Witness.*

A bank required two officers of a corporation to endorse personally, as security for its payment, the promissory note of the corporation as a condition precedent to the bank's discounting the note. Subsequently the plaintiff, one of these officers, paid the note and brought this action

against the other to recover half of the sum so paid. The defense was that at the time of the transaction the intention of the parties was that the two officers should be guarantors of the note, and inasmuch as the bank, without the consent of the defendant, had extended the time of payment, he was thereby discharged; while plaintiff's evidence was to the effect that he and the defendant were the joint makers of the note. *Held,* that the evidence does not clearly establish that the parties intended to be guarantors rather than joint makers, and the defendant was consequently not entitled to an instruction that the verdict must be for him because he was a guarantor and not a joint maker.

*Held,* further, that if the names were endorsed on the note before its delivery to the bank, the presumption is that the parties were joint makers and the plaintiff having paid the note is entitled to contribution from the defendant.

On the first trial of a suit between the parties to a promissory note, the defendant testified on his own behalf. Upon appeal a judgment for the plaintiff was reversed and a new trial awarded. The defendant died pending the appeal and his administrators were made parties defendant. *Held,* that upon the second trial, the plaintiff is not a competent witness under Code, Art. 35, sec. 3, unless he is called to testify by the opposite party, or unless the testimony given by the deceased, on the former trial, is put in evidence on the second trial.

Appeal from the Superior Court of Baltimore City (BAER, J.)

*Plaintiff's Prayer.*—If the jury believe from the evidence that the original defendant, Henry B. Keyser, on the 31st day July, 1896, being treasurer of the Maryland Manufacturing and Construction Company and in charge of the financial affairs of that company, presented to the witness Thomas, as president of the Merchants' Bank of Baltimore, the two notes offered in evidence, and that said Thomas said that he would not discount said notes unless they were endorsed by the plaintiff, Warfield, and the original defendant, Keyser, and said that he wanted them guaranteed by said Warfield and Keyser, and that the said Keyser then took said notes to said plaintiff and reported to him what said Thomas had said, and said plaintiff and said Keyser then wrote their respective names upon the back of each of said notes, and that there was no other agreement, contract or understanding or intention between said plaintiff and said Keyser at that time, and that said Keyser thereupon took said notes immediately back to said

Thomas and they were discounted by the bank for the credit of said Maryland Manufacturing and Construction Company, and shall further find that the said plaintiff has made the payments testified to by him on account of said notes on the dates so testified to, and that no payment has been made by said Keyser or on his behalf on account of either of said notes, then the plaintiff is entitled to recover the half of each payment so made by him except that made on April 1st, 1899, towit, one-half of the sum of twenty-five hundred dollars, paid on December 31st, 1900, one-half of the sum of $672.68 paid on December 27th, 1902, and one-half the sum of twenty-five hundred dollars paid on December 27th, 1902. (*Granted.*)

*Defendant's 1st Prayer.*—Inasmuch as the plaintiff's testimony shows that at the time the plaintiff and Henry B. Keyser wrote their names on the backs of the notes in controversy it was the understanding and intention of the plaintiff and said Henry B. Keyser and Douglas H. Thomas, president of the Merchants' National Bank, that the plaintiff and said Henry B. Keyser thereby assumed the responsibility of guarantors on said notes and in as much as the plaintiff's testimony further shows that on May 17th, 1899, the time of payment of said notes was extended without the consent or knowledge of said Henry B. Keyser, the said Henry B. Keyser was by such extension released from any further liability on said notes; and inasmuch as it is conceded by the plaintiff that for payments made by him before May 17th, 1899, his claim is barred by the plea of limitations, the verdict of the jury must be for the defendants. (*Refused.*)

*Defendants' 3rd Prayer.*—If the jury shall find that when the plaintiff and H. B. Keyser wrote their names on the back of the two notes in controversy, it was the understanding and intention of the said plaintiff and Keyser and also of D. H. Thomas, the president of the Merchants' Nat. Bank, that the plaintiff and said Keyser thereby assumed the responsibility of guarantors or sureties on said notes; and if the jury shall further find that subsequently the time of payment of said notes

was extended by agreement between the plaintiff and said Douglas H. Thomas as set out in the letter of said Thomas to said Warfield dated May 17th, 1899, without the concurrence or knowledge of said Henry B. Keyser, then the verdict of the jury must be for the defendants. (*Granted.*)

*Defendants' 4th Prayer.*—If the jury shall find that when the notes in controversy were offered to the Merchants' National Bank of Baltimore for discount, the witness, Douglas H. Thomas, president of the said bank, stated that he would not discount the said notes without the endorsement of the plaintiff and Henry B. Keyser, but would discount them if endorsed by the plaintiff and Henry B. Keyser and that thereupon the plaintiff and Henry B. Keyser did write their names on the back of the said notes as they now appear; and if the jury shall further find that at the time of so writing their names it was the understanding and intention of the plaintiff and of Henry B. Keyser, and also of the said Douglas H. Thomas that the plaintiff and Henry B. Keyser were to be liable on said notes as endorsers and not as joint makers, then the jury is instructed that inasmuch as there is no legally sufficient evidence of any notice to the defendants' intestate of protest or non-payment of the said notes, the verdict of the jury must be for the defendants. (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Randolph Barton* and *James M. Ambler*, for the appellants.

*W. Irvine Cross*, for the appellee.

BURKE, J., delivered the opinion of the Court.

It appears by the record in this case that on the 31st day of July, 1896, S. Davies Warfield and Henry B. Keyser, were the president and treasurer respectively of a corporation known as the Maryland Manufacturing and Construction Company. This corporation was in need of funds, and it was

proposed to raise the sum of five thousand dollars by the discount of two notes of the corporation at the Merchants National Bank of which Mr. Douglas H. Thomas was the president. Accordingly two notes were drawn in the following form.

$2500.00                                   July 31st, 1896.

On demand after date the Maryland Mnfg. and Construction Co., promise to pay to the order of

Twenty Five Hundred Dollars, at Merchant's National Bank. Value received.

The notes were signed by Mr. Warfield, as president, and by Mr. Keyser, as treasurer, and were taken by Mr. Keyser to the bank for discount. Mr. Thomas, the president of the bank, declined to discount the notes unless their payment was secured by the personal endorsement of Mr. Warfield and Mr. Keyser. Thereupon Mr. Warfield and Mr. Keyser signed their names on the back of the notes. They were again taken to the bank by Mr. Keyser, and discounted. The corporation was in financial difficulties when the notes were given, and soon thereafter Mr. Keyser left the company, and all its assets were taken over in October, 1899, by another corporation. The notes were not paid by the corporation. Keyser declined to pay the notes, or any part thereof, and finally Warfield paid the notes and all accrued interest, and brought suit to recover from Keyser one-half of the sum paid by him to the bank in discharge of the indebtedness due on said notes. A judgment was recovered by the plaintiff, from which an appeal was taken to this Court, which reversed the judgment, and awarded a new trial. *Keyser* v. *Warfield*, 100 Md. 72.

The case was retried in the Superior Court of Baltimore City, and resulted in a judgment for the plaintiff, from which this appeal is taken. At the time of the first trial Henry B. Keyser was alive and testified in the case, but after the judgment and pending the appeal he died, and his administrators, Irvine Keyser and Redmond Stewart, were made parties defendant. Two questions are presented by this appeal. First, was S. Davies Warfield, the plaintiff, a competent witness?

Second, was there error committed by the Court in its ruling upon the prayers?

This case presents conflicting theories as to the nature of the obligations growing out of the endorsement by Warfield and Keyser of the promissory notes mentioned. The theory of the plaintiff is that he and Henry B. Keyser were joint makers with the Maryland Manufacturing and Construction Company of said notes; that of the appellants is that the corporation was the principal, and that Warfield and Keyser were not co-makers, but must be treated either as endorsers or guarantors. These contentions of the appellants were submitted to the jury by their third and fourth prayers, which were conceded. Prior to the Act of 1898, ch. 119, which does not apply to this case, it was a settled rule of law in this State that one who endorses a promissory note before it is delivered to the payee is *prima facie* liable as a co-maker, or original promisor, and the same rule applies where the name of the payee of the note is not inserted therein. In support of this we need only refer to *Keyser* v. *Warfield*, 100 Md. 72, where many cases are cited to support the proposition. JUDGE BOYD, who delivered the opinion in that case, referring to the case of *Ives* v. *Bosley*, 35 Md. 262, said: "The note sued on was payable to the order of Bosley, signed by Elisha J. Guyton, and endorsed in blank by Charles T. Guyton and William M. Ives, the appellant. The plaintiff proved that the signatures were all upon the note when it was delivered to him by Elisha J. Guyton for the payment of the money which he had loaned to him. The defendant, Ives, offered to prove that at the time he placed his name upon the back of the note he signed it as *endorser*. Upon objection the Court ruled the testimony inadmissible. This Court said: 'The obligation of Ives as established by the proof of the plaintiff is clearly that of an original promissor,' and after stating the facts which are in substance above mentioned, added, 'These facts established by conclusion of law the responsibility of Ives as a joint maker or original promisor. It is true, as was urged in the argument, that the contract entered into by a blank endorsement will gen-

erally receive such a construction as will give effect to the intention of the parties, and that parol evidence will be admitted to show and explain what liabilities were intended to be assumed at the time of the transaction. If, however, the contract set up is different from that which attaches by presumption of law, it must be established by proof showing that both parties, promisor and promisee, so intended and agreed.' After quoting from *Rey* v. *Simpson*, 22 How. 341, the Court added: 'Applying these principles to the present case, it is clear that the defendant cannot avoid the liability of a joint promissor, which the law has attached to his blank endorsement, unless he proves a different understanding *of all the parties.*'" In noticing the words "endorsers," "endorsements" and "guarantee" which appeared in the record of that case, as they do in this, JUDGE BOYD said that it was manifest those words were not used "in a technical sense," but that all that Mr. Thomas intended to convey by the use of such terms was that he wanted to have security for the bank. It is, therefore, clear that the plaintiff had made out a *prima facie* case, when he had offered evidence, as the record shows he did, tending to prove the genuineness of the signatures to the notes, and that Keyser and himself had endorsed the notes in blank before their delivery to the bank. If the jury found these facts set out in the plaintiff's first prayer (and there was abundant evidence to support the hypothesis of that prayer) it would seem beyond question that the plaintiff would be entitled to recover. We, therefore, find no error in the granting of that prayer.

In order to avoid the *prima facie* liability of Henry B. Keyser as a joint maker implied by law from the fact of his endorsement of the notes prior to their delivery to the bank, the appellants attempted to show that it was the understanding and the intention of all the parties to the transaction that Warfield and Keyser should be treated as guarantors, or endorsers, and that inasmuch as the bank, without the consent or knowledge of Henry B. Keyser, extended the time for the payment of said notes he was thereby discharged from all obligation to

pày the same. By the defendants' first prayer the Court was asked to direct a verdict for the defendants upon the ground that this defense was clearly established by the plaintiff's testimony. But we cannot agree to this. Referring to the circumstances under which the notes were discounted Mr. Thomas testified as follows:

Q. Now when they were brought to you by Mr. Keyser for discount what took place?

A. I told Mr. Keyser that we could not discount the notes unless they were endorsed by Mr. Warfield and Mr. Keyser personally.

Q. What then was said?

A. Mr. Keyser went out and probably in the course of an hour, or something like that, returned with the notes endorsed as they are here by Mr. Warfield and Mr. Keyser.

Q. Now Mr. Thomas was there any other agreement with you about them, or was that the whole transaction?

A. I do not recall any other agreement at all.

Q. Was there any agreement that the gentlemen on the back should assume only the technical liability of endorsers?

A. I do not think there was any agreement. I simply said at the time that we would want them to endorse it as an evidence that it would be paid, that they would look after it, and would guarantee the payment. That was the object of getting their endorsements

Q. The word guarantee was used?

A. Yes sir, that is my recollection.

Q. The word guarantee was used. And you did not say anything about a technical endorsement?

A. I do not recall anything. My idea was as I have explained. I have always found that when an individual in a corporation endorses a paper, he generally guarantees the payment, and he sees that it is paid; and that was the sense in which I meant it.

Q. Well did you say that would guarantee the payment?

A. Yes sir.

Q. You had no idea of technical endorsement in that way at all?

A. No sir, I regarded of course the fact that they were joint makers; that is, that was the impression on my mind; that was the way I regarded it, and that was the impression on my mind. ·I do not know whether I was right or not.

And Mr. Warfield, in reply to a question as to what his un-
derstanding was as to the obligation he assumed in endorsing
the notes, said: "My understanding was that I would guar-
antee to the Merchants' Bank, and that was Mr. Thomas's
understanding, that if the company did not meet that paper,
Mr. Keyser and myself would pay the note whether it was
endorser, guarantor, or joint maker, or what not, I do not
know." The testimony of Edward W. Philips on this point
was as follows: "My recollection of the transaction is that Mr.
Keyser got me to draw the notes up and he took them to the
Merchants' Bank for discount, and I think Mr. Thomas re-
fused to discount the notes unless they were endorsed by Mr.
Warfield and Mr. Keyser, and Mr. Keyser returned to Mr. War-
field's office and secured the endorsement of Mr. Warfield,
and returned to the Merchants' Bank with the notes."

In view of this evidence it is manifest that the Court could
not grant the defendant's first prayer, which asked the Court
to direct a verdict for the defendants because as stated therein,
"the plaintiff's testimony shows that at the time the plaintiff
and Henry B. Keyser wrote their names on the backs of the
notes in controversy it was the understanding and intention of
the plaintiff and the said Henry B. Keyser and Douglas H.
Thomas, president of the Merchants' National Bank, that the
plaintiff and the said Henry B. Keyser thereby assumed the
responsibility of guarantors on said notes." The second,
third, and fourth prayers of the appellants, which were con-
ceded, fairly and clearly submitted to the jury their whole de-
fense to the action.

But we cannot agree with the Court below that Mr. War-
field was a competent witness on his own behalf to testify in
the case. His competency as a witness must be determined
by the *Act of 1902, ch. 495.* That Act which repealed and
re-enacted *sec. 2, Art. 35 of the Code,* reads as follows: Sec.
2. In actions or proceedings by or against executors or ad-
ministrators in which judgments or decrees may be rendered
for or against them, and in proceedings by or against persons
incompetent to testify by reason of mental disability, no party

to the cause shall be allowed to testify as to any transaction had with or statement made by the testator, intestate or party so incompetent to testify, either personally or through an agent since dead, lunatic or insane, unless called to testify thereto by the opposite party, *or unless the testimony of such testator, intestate or party incompetent to testify shall have already given in evidence concerning the same transaction or statement, in the same cause, on his or her own behalf, or on the behalf of his or her representative in interest;* nor shall it be competent in any case for any party to the cause who has been examined therein as a witness to corroborate his testimony when impeached by proof of his own declaration or statement made to third persons out of the presence and hearing of the adverse party."

Under the plain language of this Act there are only two contingencies under which Mr. Warfield could be permitted to testify. First upon the call of the opposite party, and, secondly, upon the introduction in evidence of the testimony of Henry B. Keyser given in evidence at the former trial of this cause respecting the subject-matter of the suit. One, or the other of these conditions must have existed to remove the disqualification imposed upon him by the express words of the Act, and as neither is shown to exist, Mr. Warfield was an incompetent witness. To hold that the mere fact that the deceased had testified would make the survivor a competent witness would be not only to disregard the language of the Act, but would be to lay down a rule under which, in many cases, great injustice might be done. The leading purpose of the Evidence Acts, in imposing certain restrictions upon the rule removing the common law disqualification of witnesses, was to preserve mutuality and to prevent undue advantage being given to the surviving party. But to adopt the construction of this Act contended for by the appellee would often frustrate the evident intent of the law. In many cases, especially in suits in chancery, it is a comparatively easy matter to introduce the testimony of a deceased witness taken in the same cause, but in many cases it would be extremely difficult to

comply with the legal requirements which would make the evidence admissible. The safe rule, and the one which accords with the legislative intent as manifest by the words employed in the Act, is that which excludes the surviving party as a competent witness in cases like the one under consideration, unless he is called to testify by the opposite party, or unless the evidence given by the deceased in the former trial is actually given in evidence at the subsequent trial of the same cause in which the survivor offers to testify on his own behalf. For the error committed in admitting Mr. Warfield as a competent witness, we are constrained to reverse the judgment.

*Judgment reversed, and new trial awarded the appellee to pay the costs.*

(Decided February 15th, 1906.)