# G. PULLA REDDY ET AL. v. VIBHAKAR J. MODY ET AL.

[No. 874, September Term, 1977.]

*Decided May 10, 1978.*

*Refiled July 12, 1978.*

The cause was argued before MASON, LISS and MACDANIEL, JJ.

*Sylman I. Euzent* for appellants.

*Roy Mason,* with whom were *William A. Ehrmantraut* and *Donahue & Ehrmantraut* on the brief, for appellee Vibhakar J. Mody. *John J. O'Neill, Jr.,* with whom were *Ford & O'Neill* on the brief, for appellee Sigma Centers of America, Incorporated.

MacDaniel, J., delivered the opinion of the Court.

An action for medical malpractice was filed by Ronald S. Schimel, personal representative of the estate of Kamala Reddy, G. Pulla Reddy, individually and as husband of Kamala Reddy, and Getta G. Reddy, Swinita G. Reddy, Ragashkar G. Reddy and Rajandra G. Reddy, as children of Kamala Reddy, appellants, against Vibhakar J. Mody and Sigma Centers of America, Incorporated, appellees. This case was tried in the Circuit Court for Montgomery County by a jury. On July 15, 1977, the jury returned a verdict in favor of all appellees. This appeal was timely filed after the denial of appellants' motion for a retrial.

On or about November 28, 1975, the deceased, Kamala Reddy, the wife and mother of the appellants, presented herself to the Sigma Reproductive Health Center, Inc., operated by appellee Sigma Centers of America, Incorporated, and applied to have an abortion procedure performed. Appellee Dr. Mody attended to Sigma Centers patients requesting abortions two days a week. Dr. Mody had no written contract with Sigma Centers but received a fixed fee per patient. The deceased and her husband both signed the "consent" portion of the application form. This application indicated that the deceased denied any allergies to medications, except sulfa. Deceased's husband, to his knowledge, denied that his wife ever had any complications with the birth of their four children or any adverse reaction to the administration of a drug or anesthetic. In preparing the deceased for the operation, Dr. Mody administered a local anesthetic. The deceased had a violent reaction to the local anesthetic, was then transferred to the Washington Adventist Hospital where she died the following day. Nella

Williams, an employee of appellee Sigma Centers, was the nurse assisting appellee Mody at the time of the incident involving Mrs. Reddy and in which she suffered the reaction here involved. Nurse Williams was called as a witness by appellee Sigma Centers. Over objection, Nurse Williams was allowed to testify to an alleged conversation between the deceased and appellee Mody. The testimony in question was as follows:

"Q    Mrs. Williams, tell the Court and the jury what was said.
A    Camela [sic] Reddy complaining, 'I do not feel well.'
Dr. Mody asking, 'Have you ever felt this way before?'
Camela [sic] Reddy saying, 'Yes.'
Dr. Mody stating, 'Why didn't you tell us?'
Camela [sic] Reddy stating, 'I didn't think it would be so bad.' "

Appellee Mody, over objection, was allowed to testify concerning this same alleged conversation as follows:

"Q    Would you answer the question, Dr. Mody? What further conversation was had with Mrs. Reddy?
A    Sir, as soon after she mentioned that she — she is not feeling well, I went over to her side; I asked her if she had similar such reactions in the past and to which she said, 'Yes.', she had something like this before and I told her, 'Why didn't you tell us before?' "

The issues presented to this Court on appeal are:

1. Did the trial court err in admitting the testimony of Nurse Williams as to conversations between the deceased and Dr. Mody?
2. Did the trial court err in not recognizing Nurse Williams as an incompetent witness?
3. Did the trial court err in admitting testimony of appellee Mody as to his conversations with the deceased?

All three questions presented for our review turn on the application of the Dead Man's Statute. Before discussing the merits of the issues, it is necessary to consider the purpose and history behind the Statute.

At common law, in order to avoid self-interested perjury, no party to a lawsuit was competent to testify in that suit. 2 J. Wigmore, *Evidence,* § 575 (3d ed. 1940). The Legislature by the Acts of 1864, ch. 109, § 1,[1] liberalized the common law rule and qualified witnesses, including parties to the case, who by reason of interest had previously been disqualified "except as hereinafter excepted." Section 1 of ch. 109 has been retained in substance in § 9-101 of the Courts and Judicial Proceedings Article and reads in pertinent part as follows:

> "§ 9-101. *In general.*
>
> Unless otherwise provided in this subtitle: ... (2) litigants and their spouses are competent and compellable to give evidence."

The Dead Man's Statute, § 9-116 of the Courts and Judicial Proceedings Article, originally enacted by the Acts of 1864, ch. 109, § 2,[2] remains as a vestige of the common law

---

1. "No person offered as a witness shall hereafter be excluded by reason of incapacity from crime or interest, from giving evidence, either in person or by deposition, ... in the trial of any issue joined or hereafter to be joined, or of any matter or question, or on any inquiry arising in any suit, action or proceeding, civil or criminal, in any court, ...; but that every person so offered may and shall be admitted to give evidence, notwithstanding that such person may or shall have an interest in the matter in question, or in the event of the trial of any issue, matter, question or inquiry, or of the suit, action or proceeding in which he is offering as a witness, ... and the parties litigant, and all persons in whose behalf any suit, action or other proceeding may be brought or defended, themselves and their wives and husbands shall be competent and compellable to give evidence in the same manner as other witnesses, except as hereinafter excepted."

2. The first Dead Man's Statute in the State reads as follows:

"When an original party to a contract or cause of action is dead or shown to be lunatic or insane or when an executor or administrator is a party to a suit, action, or other proceedings, the other party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer or upon the call of his co-plaintiff or co-defendant otherwise than now by law allowed, unless a nominal party merely."

disqualification. It carves from the rule rendering interested parties competent (Courts and Judicial Proceedings Article § 9-101), an exception which disallows a party from testifying to transactions with a deceased person. The Statute presently reads as follows:

"Section 9-116. *Dead man's statute.*

A party to a proceeding by or against a personal representative, heir, devisee, distributee or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement."

The general purpose of the Statute is to equalize the position of the parties by imposing silence on the survivors as to transactions with or statements by the decedent or at least by requiring those asserting claims against the decedent's estate to produce testimony from disinterested persons. *Riley v. Lukens Dredging and Contracting Corp.,* 4 F. Supp. 144 (D.C. Md. 1933). Such a rule renders as much testimony as possible admissible while preventing self-interested perjury.

The testimony meant to be excluded by the Statute is only testimony of a party to a cause which would tend to increase or diminish the estate of the decedent by establishing or defeating a cause of action by or against the estate. *Snyder v. Crabbs,* 263 Md. 28, 282 A. 2d 6 (1971); *Wm. D. Shellady, Inc. v. Herlihy, et al.,* 236 Md. 461, 204 A. 2d 504 (1964); *Guernsey v. Loyola Federal Savings and Loan Association,* 226 Md. 77, 172 A. 2d 506 (1960); *State, Use of Miles v. Brainin,* 224 Md. 156, 167 A. 2d 117 (1960); *Robinson v. Lewis,* 20 Md. App. 710, 317 A. 2d 854 (1974). The language of the Statute makes this clear by specifically narrowing its application to "proceeding by or against a personal representative, heir,

devisee, distributee or legatee *as such* ...'' (Emphasis supplied.) This limitation is important in the case before us because of the two distinct causes of action asserted. Count one of the second amended declaration is brought by the personal representative on behalf of the estate. Counts two and three are wrongful death actions brought by the husband and children in their own right.

The first inquiry as to each of the causes of action is, does the Statute apply? If the Statute applies the question becomes, does the Statute work to exclude the testimony?

With regard to counts two and three, the wrongful death actions, the answer to the first inquiry is determinative. The Dead Man's Statute does not apply. Any money recovered by the children or the husband of the deceased is received by them in their own right and not through the estate of the deceased because of their status as heir, devisee, distributee or legatee.

The Court of Appeals discussed this point in *State, Use of Miles v. Brainin, supra.* In *Brainin,* a case factually similar to the one under consideration, the husband and children of the deceased instituted a wrongful death action, claiming malpractice in that the defendant doctor failed to diagnose a diabetic condition from which the deceased died.

The defense was that the doctor had no reason to know of the true nature of the disease. The doctor denied he had ever been informed of the symptoms of diabetes. The plaintiffs sought to contradict this with evidence that both the husband and a daughter were present when the patient told the doctor of the symptoms. The trial judge excluded the plaintiffs' testimony on the point.

The trial court in sustaining the objection ruled that the plaintiffs were ''distributees'' within the meaning of the Statute.

The Court of Appeals reversed holding that in wrongful death actions the plaintiffs do not bring the action as ''distributees of a decedent as such.'' The Court held that it is the plaintiffs who are entitled to damages and not the estate of the deceased, and therefore the husband and daughter should have been allowed to testify.

Likewise, in the case at hand, the Dead Man's Statute was inapplicable with regard to the wrongful death actions and the introduction of Nurse Williams and Dr. Mody's testimony was not erroneous as to those counts.[3]

The Dead Man's Statute is applicable to the first count. Any recovery by the personal representative, unlike the recovery in the wrongful death actions, would go directly into the decedent's estate. The inquiry then turns to whether the Dead Man's Statute works to exclude the testimony of Nurse Williams and Dr. Mody in Count I. The three questions presented by the appellants address this point.

The first two issues raised by the appellants attack the trial court's ruling that Nurse Nella Williams was a competent witness. It is the appellants' position that the working relationship of the appellee, Dr. Mody, and Nurse Williams was such as to render her a "party" for the purposes of the Dead Man's Statute and, therefore, she was rendered incompetent to testify. We disagree.

The purpose of the Statute, as was pointed out above, is to prevent the surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, his representative is deprived of the decedent's version of the transaction or statement. *Ortel v. Gettig,* 207 Md. 594, 116 A. 2d 145 (1955). This disability, while protecting the deceased's estate, can create a great injustice to the survivor. As was stated in C. McCormick, *Evidence,* § 65 (2d ed. 1972):

"Most commentators agree that the expedient of refusing [to] listen to the survivor is, in the words of Bentham, a 'blind and brainless' technique. In seeking to avoid injustice to one side, the statute-makers have ignored the equal possibility of creating injustice to the other. The temptation to the survivor to fabricate a claim or defense is obvious enough, so obvious indeed that any jury will realize that his story must be cautiously heard."

Faced with the uncertainty and injustice created by the

---

3. The objections and rulings below and the arguments on appeal were based on the Dead Man's Statute. We are therefore not called to rule on the admissibility of the evidence under any other doctrine. *Von Lusch v. State,* 279 Md. 255, 369 A. 2d 468 (1977).

Dead Man's Statute, the Maryland Courts have sought to construe strictly the Statute in an effort to disclose as much evidence as the rule will allow. *Stacy v. Burke,* 259 Md. 390, 269 A. 2d 837 (1970). The rule which has evolved is that a party is one who has an interest in the property sought or a person having a direct pecuniary and proprietary interest in the outcome of the case. *Trupp v. Wolff,* 24 Md. App. 588, 335 A. 2d 171 (1975). Except in very unusual cases, the persons excluded from testifying are not those with an interest of any sort, but rather traditional real parties in interest and their representatives. *Trupp v. Wolff, supra.*

Mrs. Williams was not a traditional party, nor did she have a pecuniary or proprietary interest in the outcome. Mrs. Williams was merely an employee of a corporation which was a party. As such she was competent to testify.

The appellants next claim that the trial court erred in admitting the testimony of Dr. Mody as to his conversation with the deceased.

The Dead Man's Statute has a self-contained exception which renders a party to a proceeding competent to testify about a statement made by a deceased where the "testimony of the dead or incompetent person has already been given in evidence in the same proceeding concerning the same transaction or statement."

The trial court ruled and the appellees argue that under the above exception a party to a proceeding may testify about a statement made by the deceased once the substance of the statement has been received into evidence. More specifically, it is the appellees' contention that because the substance of the conversation between the deceased and Dr. Mody was testified to by Mrs. Williams, Dr. Mody was rendered competent to testify about the conversation. We disagree.

It is true, as we pointed out above, that the courts construe the Dead Man's Statute in order to disclose as much evidence as possible. This does not mean, however, that the language or the purpose of the Statute can be ignored.

The language of the Statute is explicit. The statutory exception is triggered by "testimony of the dead or incompetent person." Testimony is defined as "evidence given by a competent witness, under oath or affirmation, as

distinguished from evidence derived from writings, and other sources." Black, Black's Law Dictionary 1646 (4th ed. 1968). By the terms of the Statute, the testimony must be that of the deceased or incompetent person. The exception is not triggered by hearsay testimony of a third person. The mere fact that there has been testimony of what the dead person said, regardless of the source, is not enough.

The above distinction was made more explicit by the language of the exception as first enacted by the Acts of 1876, ch. 222, § 2. The exception read in pertinent part as follows:

> "... except in case where the party to such suit, action or other proceeding has died, or become lunatic or insane, *after having testified in his own behalf,* then the opposite party shall be competent witness on his own behalf in such case ... but shall only testify as to matters upon which such deceased, lunatic or insane person was examined and testified to ..." (Emphasis added.)

The language of the exception was changed by the Acts of 1902, ch. 495, § 2, to read as follows:

> "... or unless the testimony of such testator, intestate or party incompetent to testify shall have been already given in evidence concerning the same transaction or statement, in the same cause, on his or her own behalf or on behalf of his or her representative in interest; ..."

By the Acts of 1973, 1st Sp. Sess., ch. 2, § 2, the exception was adopted in its present form.

The language of the Statute has been revised (*See* Revisor's Note § 9-116), but the meaning and purpose have remained the same.

It was the purpose of the Statute in 1864, as it is today, to put the parties to a suit upon terms of substantial equality in regard to the opportunity to give testimony. *Riley v. Lukens Dredging and Contracting Corp., supra.* This goal of mutuality is achieved by allowing a party to testify about a transaction only where the *deceased* has previously

about the transaction. This equality between the parties would be destroyed if, as the appellees suggest, a third party's testimony concerning the transaction would remove the disqualification of the party litigant.

The Court of Appeals has had two occasions to construe the exception under consideration here. Neither case is factually identical to the case *sub judice;* they do, however, offer us some guidance in the application of the exception.

In *Keyser v. Warfield,* 103 Md. 161, 63 A. 217 (1906), the plaintiff Warfield sued Keyser for contribution due on a note. At the first trial Keyser testified on his own behalf. Upon appeal a judgment for the plaintiff was reversed and a new trial ordered. Keyser died pending the appeal and his administrators were made parties defendant. The Court held that upon the second trial the plaintiff was not a competent witness unless the testimony given by the deceased at the former trial was actually given in evidence at the subsequent trial. The Court stated:

> "The leading purpose of the Evidence Acts, in imposing certain restrictions upon the rule removing the common-law disqualification of witnesses, was to preserve mutuality and to prevent undue advantage being given to the surviving party." *Id.* at 170, 63 A. at 219.

The Court held that the reason for the rule would be frustrated if the exception removed the disqualification of the plaintiff merely because of the introduction of the testimony at the former trial without its introduction at the second trial.

In *Ortel v. Gettig, supra,* a surviving widow sued the executor of her deceased husband to have an ante-nuptial agreement between the plaintiff and the deceased declared null and void. The plaintiff claimed that the presence of a third party, competent to testify, at the conference where the agreement was executed operated to allow the admission of the plaintiff's testimony as to what was said. The Court of Appeals disagreed. The Court held that such a construction would be repugnant to the Statute's general purpose of equalizing the position of the parties.

In both of the above cases the Court indicated that the requirement for admissibility of the party's testimony was the introduction of testimony by the person since deceased concerning the transaction with the party litigant. The requirement was not met in the cases above, nor was it met in the case at hand.

The testimony of Mrs. Williams about the conversation between Dr. Mody and the deceased did not render Dr. Mody competent to testify about that transaction and the admission of his testimony into evidence constituted error.

In determining whether the admission of Dr. Mody's testimony was harmless, we are guided by the Court of Appeals where, in *Dobbs v. State,* 148 Md. 34, 129 A. 275 (1925), it was said:

> ". . . when the errors are of such a character, and so interwoven with the case, as to lead a fair and impartial mind, trained and experienced in judicial investigation, upon an examination of the whole case and all the rulings involved therein, to the conclusion that there is a reasonable probability that such errors may have affected the determination of the case, they are prejudicial and reversible." *Id.* at 48-49, 129 A. at 281.

While the substance of Dr. Mody's testimony concerning the conversation with the deceased was testified to by Nurse Williams, we cannot say that Dr. Mody's testimony, although cumulative, could not have reasonably affected the determination of the case. The substance of the conversation went to the heart of the defense case and it can be inferred within a reasonable probability that Dr. Mody's testimony about the conversation affected the jury's determination of the case. The admission of his testimony in contravention of the Dead Man's Statute, therefore, cannot be considered harmless error.

In conclusion, it is this Court's ruling that the Dead Man's Statute does not apply to the wrongful death actions involved in this case and that the testimony of Nurse Williams and Dr. Mody was properly admitted as to those counts. The Statute,

686

however, does apply to the action brought by the personal representative and for the reasons stated above, the introduction of Dr. Mody's testimony into evidence was error with regard to that cause of action.

> *Judgment affirmed as to counts two and three of the second amended declaration.*
> *Judgment reversed as to count one and remanded for a new trial.*
> *Costs to be paid two-thirds by appellant and one-third by appellees.*