684 A.2d 471

**Elizabeth FARAH**

v.

**Preston L. STOUT, Personal Representative of the Estate of John M. Sanderson, Jr.**

No. 1945, Sept.Term, 1995.

Court of Special Appeals of Maryland.

Nov. 4, 1996.

William McC. Schildt (Strite and Schildt, on the brief), Hagerstown, for Appellant.

Michael E. Nehring (Howard W. Gilbert, Jr. and Gilbert, Marks & DiGirolamo, Chtd., on the brief), Hagerstown, for Appellee.

Argued before WILNER, C.J., WENNER, J., and PAUL E. ALPERT, Judge (retired), Specially Assigned, JJ.

WILNER, Chief Judge.

This appeal presents several evidentiary questions. The three principal issues are whether the Circuit Court for Washington County, in a suit by appellant Elizabeth Farah against the estate of John M. Sanderson, Jr., erred in declining to admit (1) Elizabeth's testimony concerning her reasons for performing services for Mr. Sanderson and his wife, (2) testimony of Elizabeth's husband, J. Ramsay Farah, concerning conversations he had with Mr. Sanderson and Elizabeth, and (3) testimony of three non-party witnesses concerning statements made by Mr. Sanderson of his intention to give money to Elizabeth and Ramsay. Items (1) and (2) require us to determine whether the trial court properly prohibited Elizabeth and Ramsay from testifying under Md.Code Cts. & Jud. Proc. art., § 9–116, commonly referred to as the dead man's statute. The third item presents a hearsay question.

The relevant facts are largely undisputed. On July 23, 1993, Elizabeth filed two claims against Mr. Sanderson's estate in the Orphans' Court for Washington County. The dispute arose over an alleged contract by Mr. Sanderson to make a bequest of $110,000 to Ramsay and Elizabeth in exchange for Elizabeth's agreement to care for Mrs. Sanderson. After Mr. Sanderson died on February 25, 1993, the Farahs learned that he had failed to make the promised bequest in his will. The first claim for $100,000, filed jointly by Elizabeth and Ramsay, was based on Mr. Sanderson's oral promise to leave Elizabeth and Ramsay $100,000 upon his death as payment for services Elizabeth had rendered to Mr.

Sanderson and his wife. The second claim for $10,000, filed by Elizabeth individually, was based on Mr. Sanderson's oral promise to reimburse Elizabeth for items she had purchased for the Sandersons.

The evidence at trial showed that the Farahs and Sandersons developed a close friendship after they met at a church function in 1985. Shortly thereafter, Mrs. Sanderson's health began to decline, and the Sandersons employed several home care agencies, which, for various reasons, proved unsatisfactory. Around 1989, Elizabeth assumed daily responsibility for Mrs. Sanderson's care and for all the Sandersons' household chores, including laundry, meal preparation, and cleaning. The Farahs maintain that Elizabeth undertook those responsibilities in return for Mr. Sanderson's promise to make a bequest of $100,000.

On May 16, 1995, the Orphans' Court transmitted the following two questions to the circuit court:

"1. Did the decedent herein, John M. Sanderson, Jr. make a valid, enforceable contract during his lifetime to bequeath to the claimant, Elizabeth Farah, the sum of $10,000.00?

2. Did the decedent herein, John M. Sanderson, Jr. make a valid, enforceable contract during his lifetime to bequeath to the claimants, Elizabeth Farah and J. Ramsay Farah, the sum of $100,000.00?"

Prior to trial, Ramsay and Elizabeth Farah assigned and transferred their joint interest in the $100,000 claim to Elizabeth individually, thereby making her the only plaintiff/claimant in the circuit court proceeding. Despite the assignment of interest to and substitution of Elizabeth in the $100,000 claim, the circuit court ruled *in limine* that Ramsay was still a "party" under Maryland's dead man's statute and barred him from testifying at the trial about any statements made by or transactions with Mr. Sanderson.

At trial, Elizabeth testified on direct examination that for approximately two and a half years "she cared for and performed numerous household chores on a daily basis" for Mr.

Sanderson.[1] She was then asked "why did you do, at the Sanderson home, all the things that you said you've done on a daily basis, and weekends and sometimes at night?" After defense counsel objected, plaintiff's counsel proffered that Elizabeth would testify that she did those things "because she understood she was going to be compensated." The court sustained the objection.

Ramsay's testimony at trial was also riddled with objections from defense counsel. In addition to prohibiting Ramsay from testifying about conversations he had with Mr. Sanderson regarding compensation for his wife, the court sustained appellee's objections to questions about a conversation Ramsay had with Elizabeth regarding her decision to care for Mrs. Sanderson.

"Q. [O]n what basis did you ask your wife if she would do the job?

[Objection sustained.]

Q. Without any reference to Mr. Sanderson, what did you tell your wife?

[Objection sustained.]

Q. As a result of your discussion with your wife, what did she do?

. . .

A. She accepted the work.

Q. What work are you referring to?

A. To take care of Mrs. Sanderson and Mr. Sanderson.

[Objection and motion to strike.]

THE COURT: Sustained, jury will disregard."

---

1. Prior to Mrs. Sanderson's death in 1992, Elizabeth claimed that she was responsible for "house cleaning, laundry, shopping, meal preparation, and personal hygiene services." After Mrs. Sanderson died, Elizabeth said that she continued to provide "house cleaning and housing services" to Mr. Sanderson.

The court also prohibited Ramsay from testifying about whether he ever talked with Elizabeth about compensation for caring for Mrs. Sanderson. At the conclusion of direct examination of Ramsay, appellant's counsel proffered the following:

"[I]f asked, Dr. Farah would testify that he had a conversation with Jack Sanderson at the time home care services were, uh, having a problem with those, that Jack Sanderson asked him if Elizabeth would care for Delores on a daily basis as needed and if she would agree to do so for compensation. And that he, Ramsay, Dr. Farah would testify, uh, agreed that there would be a payment of a hundred thousand dollars ($100,000.00) for their services, for the rest of Delores' life, and, uh, further that Dr. Farah told Jack Sanderson that he preferred not to have the payment during Jack Sanderson's life but at his death, uh, for tax reasons."

The court sustained objections to admission of that testimony based on the dead man's statute. The court also excluded as hearsay the testimony of three other witnesses who would have testified that Mr. Sanderson told them that he was going to give the Farahs $110,000.00 in return for their services.

In response to appellee's motion for a directed verdict at the conclusion of appellant's case, the circuit court filed an opinion and order on November 16, 1995 that answered in the negative the two questions posited by the Orphans' Court and granted appellee's motion for judgment. In the opinion, the court found:

"[T]he Plaintiff, Elizabeth Farah, as well as Elizabeth Farah and J. Ramsay Farah, together, have failed to establish the existence of a contract between them and John M. Sanderson, Jr. for either … $10,000.00 … or for … $100,000.00. The Plaintiffs in this case have simply been unable to adduce testimony of the existence of a valid, enforceable contract."

From this order appellant appealed to this Court. We now affirm the circuit court's decision.

## DISCUSSION

## I.

### Elizabeth Farah's Testimony

The Maryland dead man's statute, codified in Md.Code Cts. & Jud. Proc. art., § 9–116, provides:

"A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement."

■ The purpose of the dead man's statute is to seal the lips of a party in a proceeding "by or against" a personal representative about facts that could be disputed only by the deceased. *Reddy v. Mody*, 39 Md.App. 675, 679, 388 A.2d 555, *cert. denied*, 283 Md. 736 (1978). In *Reddy*, we recognized that the statute can create an "injustice to the survivor" and, therefore, must be construed strictly in order "to disclose as much evidence as the rule will allow." *Id.* at 681–82, 388 A.2d 555. We are, nevertheless, mindful of the statute's underlying purpose: "preventing self-interested perjury." *Id.* at 679, 388 A.2d 555.

■ Obviously, the dead man's statute barred Elizabeth from testifying that she had an agreement or contract with Mr. Sanderson. Based upon the statute, the trial court also excluded the proffered testimony of Elizabeth that she had performed services for Delores because she understood that she was going to be compensated. The distinction between the clearly prohibited statement—"Mr. Sanderson contracted with me"—and the proffered one—"I cared for Mrs. Sanderson because I expected to be paid"—is not discernable for purposes of the dead man's statute when the only basis of the

expectation of payment was an agreement by Mr. Sanderson to make the payment. Absent that inferred basis, the testimony would have been irrelevant. We find, therefore, that Elizabeth's testimony that she "understood she was going to be compensated" as a direct result of an agreement with Mr. Sanderson was properly barred.

## II.

### Exclusion of Ramsay Farah's Testimony

Prior to trial, the circuit court ruled that, despite the fact that Ramsay and Elizabeth assigned and transferred their interest in the $100,000 claim to Elizabeth individually, Ramsay was still a "party" for purposes of the dead man's statute, and, therefore, he was barred from testifying about a conversation he had with Mr. Sanderson regarding compensation to be paid to Elizabeth. Elizabeth also challenges the court's exclusion of Ramsay's testimony regarding conversations he had with Elizabeth about her decision to care for Mrs. Sanderson. The gist of each of those conversations was that, in return for caring for the Sandersons, Elizabeth would receive payment on Mr. Sanderson's death.

Elizabeth argues that the court erred in excluding Ramsay's testimony about his conversation with Mr. Sanderson because, after the assignment of his interest in the $100,000 claim and his withdrawal from the case, Ramsay was no longer a party and his testimony was not subject to the restrictions of the dead man's statute. We do not dispute Elizabeth's claim that, by its express terms, the statute applies only to the "testimony of a party to a cause." *Montgomery Co. v. Herlihy*, 83 Md.App. 502, 512, 575 A.2d 784, *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990). We previously explained that, "[t]he persons excluded from testifying [by the dead man's statute] are not those with an interest of any sort, but rather traditional real parties in interest and their representatives." *Trupp v. Wolff,* 24 Md.App. 588, 602, 335 A.2d 171, *cert. denied,* 275 Md. 757 (1975). The spouse or child of a party has been permitted to testify in his or her spouse's or

parent's favor, for example, even though the witness possibly stood to benefit in the proceedings. *E.g., Snyder v. Cearfoss,* 187 Md. 635, 51 A.2d 264 (1947) (husband permitted to testify as to promises decedent made to wife); *Marx v. Marx,* 127 Md. 373, 96 A. 544 (1916) (son permitted to testify regarding promises decedent made to mother); *Trupp v. Wolff, supra* (mother permitted to testify in daughter's claim against stepfather's estate). Consequently, any financial benefit Ramsay expected to receive as Elizabeth's husband from her recovery would not, in and of itself, disqualify him from testifying. Nevertheless, we believe that, in this case, the court did not err in barring Ramsay from testifying about conversations with either Elizabeth or Mr. Sanderson.

This is, essentially, a question of statutory construction and application. In construing a statute, our role is to "ascertain and carry out the true intention of the legislature." *C.S. v. Prince George's Co.,* 343 Md. 14, 24, 680 A.2d 470 (1996). To discern the legislative intent, we "consider the general purpose, aim, or policy behind the statute." *Id.*

We have discovered only three cases on point. Two of them support appellant's view that the statute applies only to persons who are actual, technical parties to the action and that, if the witness, whose testimony would otherwise be excluded, has assigned his or her claim to another, the witness is no longer a party and may testify. *See Witte v. Koeppen,* 11 S.D. 598, 79 N.W. 831 (1899); *Evans v. Mason,* 82 Ariz. 40, 308 P.2d 245 (1957). In *General Bonding & Casualty Ins. Co. v. McCurdy,* 183 S.W. 796 (Tex.Civ.App.1916), the Texas Court took a different view and precluded the assignor witness from testifying. At 799, the Court observed:

"If every person who claims to have a contract with a deceased person can, by assigning his claim, free himself of the inhibition of the statute against testifying to transactions with the deceased, the statute for all practical purposes, would be rendered nugatory, and might as well be abolished. It may well be doubted whether the statute is a good one, but, as long as it remains the law, the courts,

while not extending it, will give it the practical purpose thereof."

Our application of the dead man's statute to Ramsay's testimony is guided by the prior pronouncements of the Court of Appeals and of this Court. The Court of Appeals has explained that the general purpose of the dead man's statute is to impose silence upon interested parties as to transactions with or statements by the decedent. *Snyder v. Crabbs,* 263 Md. 28, 29, 282 A.2d 6 (1971). In *Reddy v. Mody,* we underscored the fact that, although the language of the statute has been amended, its "meaning and purpose have remained the same." 39 Md.App. at 683, 388 A.2d 555.

Appellant concedes that, if Ramsay had remained a party to the proceeding, the dead man's statute would have excluded testimony from both him and his wife relating to the alleged agreement they had with Mr. Sanderson. That agreement, as noted, was with both Elizabeth and Ramsay. We agree with the Texas Court that it would frustrate the entire purpose of the statute if a claimant, who was in fact in concert with the decedent, were permitted to circumvent the dead man's statute simply by assigning his claim to a third party, and then assert the status of a non-party to the action.

Although Ramsay was no longer a *named party* in the legal proceeding, we simply cannot ignore the fact that he was both a party to the contract with Mr. Sanderson and a party in the original complaint. Furthermore, as Ramsay never presented any evidence regarding the terms of his assignment, we are unsure as to what interest he may have retained in the contract claim. Although ordinarily the term "party" is used to designate the opposing litigant in a judicial proceeding, in *Reddy,* we explained that for purposes of the dead man's statute "a party is one who has an interest in the property sought *or a person having a direct pecuniary and proprietary interest in the outcome of the case."* 39 Md.App. at 682, 388 A.2d 555 (emphasis added). Therefore, regardless of whether Ramsay remained a *named plaintiff,* in considering the underlying purpose of the dead man's statute, he continued to be a

*real party in interest* and was not competent to testify as to agreements with Mr. Sanderson.[2]

■ We also find that the trial court correctly excluded Ramsay's testimony concerning discussions that he had with Elizabeth about her decision to work for the Sandersons. Appellant's questions on this matter were simply veiled attempts to admit testimony that Elizabeth was working for the Sandersons because of Mr. Sanderson's promise to make a bequest in his will. As the Court of Appeals explained: "It should be obvious that if she could not testify to these matters herself, she could not render them admissible by the simple expedient of telling them to" her husband. *Jones v. Selvaggi,* 216 Md. 1, 10, 139 A.2d 246 (1958).

## III.

### Three Non–Party Witnesses' Testimony

■ Appellant complains that the circuit court erred in excluding the testimony of three non-party witnesses as to Mr. Sanderson's intention, upon his death, to pay $110,000 to Elizabeth and Ramsay. Undoubtedly, that evidence was offered to prove the truth of an out-of-court statement and therefore constituted hearsay. The issue is whether it is admissible as an exception to the hearsay rule. Appellant argues that the witnesses' statements fall within three recognized exceptions—state of mind, admission of predecessor in interest, and declaration against interest.

---

2. We do not believe this decision contradicts any prior applications of the statute permitting testimony from children or spouses who, undeniably, stood to gain simply by virtue of their relationship with a party. *See, e.g., Marx v. Marx, supra,* and *Trupp v. Wolff, supra.* In contrast to those witnesses, Ramsay actually had "the right to bring and control the action." *South Down Liquors, Inc. v. Hayes,* 323 Md. 4, 7, 590 A.2d 161 (1991).

Furthermore, we believe this decision is in line with our finding in *Herlihy, supra,* wherein we determined that the dead man's statute "is of sufficient breadth as to encompass actions in which [a] personal representative substitutes for a plaintiff or defendant before or during trial, but after the action has been filed." *Id.* at 512, 575 A.2d 784.

First, appellant argues that the testimony should have been admitted under Md. Rule 5–803(b)(3), commonly referred to as the "state of mind" or "statement of intent" exception to the hearsay rule. Under this exception, certain forward-looking statements of intent are admissible to prove that the declarant subsequently took a later action in accordance with his stated intent. *See Ebert v. Ritchey*, 54 Md. App. 388, 398, 458 A.2d 891, *cert. denied*, 296 Md. 414 (1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 356 (1984). In *Ebert*, we affirmed the admission of hearsay statements under the state of mind exception to explain why the decedent placed his brother's name on five bank accounts. In the present case, however, no *action* is alleged. Instead, appellant is challenging Mr. Sanderson's *inaction*—his failure to include the Farahs in his will. Even if Mr. Sanderson intended to make a gift to the Farahs and mentioned that intention to others, the fact of the matter is that ultimately no such bequest was ever made. Because the witnesses' statements were not offered to explain Mr. Sanderson's future conduct, the state of mind exception does not apply.

Elizabeth next maintains that the statements are admissions of appellee's predecessor in interest.[3] Relying on *Mannix v. Baumgardner*, 184 Md. 600, 42 A.2d 124 (1945), she claims that Mr. Sanderson's statements demonstrated the existence of his contract with the Farahs. *Mannix* involved a dispute over the decedent's oral contract to devise to his stepdaughter all his real estate if she moved into his house and cared for him. After that agreement, the decedent executed a will in his stepdaughter's favor. Several months later he executed a second will in favor of his sister. On appeal, the estate challenged the trial court's admission of the first will into evidence.

Although the underlying facts of *Mannix* are analogous to Elizabeth's claim, we find the two cases distinguishable. We

---

**3.** Admissions are "the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him." *Aetna Casualty & Surety Co. v. Kuhl*, 296 Md. 446, 455, 463 A.2d 822 (1983).

believe the *Mannix* Court upheld the admission by the decedent—in the form of the first will—because there was "direct testimony ... that a contract was made, and this [was] corroborated by a number of circumstances" including the will. *Id.* at 605, 42 A.2d 124. In upholding the admission of the will, the Court of Appeals wrote that "[t]he execution of the will was a fact of a *corroboratory* character bearing upon the question of the existence of the contract, though not sufficient, standing alone, to establish it." *Mannix, supra* at ·607, 42 A.2d 124 (emphasis added). The evidence in *Mannix* contrasts sharply with the instant case, which contains no "direct" evidence of a contract between the Farahs and Mr. Sanderson.

Finally, Elizabeth claims the declaration against interest exception applies as set forth in Md. Rule 5–804(b)(3):

"A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

Specifically, Elizabeth argues that Mr. Sanderson's statement that he "was going to give $110,000 for all they had done for him," amounts to an acknowledgment of indebtedness or a declaration against pecuniary interest.

The declaration against interest exception is based on the notion that statements acknowledging indebtedness are presumptively reliable, since a reasonable person would not acknowledge indebtedness unless it were true. 6 L. McLain, MARYLAND PRACTICE, § 804(3).1 (1987). For such evidence to be admissible, however, the trial judge must be satisfied that the statement was, in fact, against the declarant's interest and that the declarant understood that his statement could cause him a loss of money (or property or liberty). *See State v. Standifur,* 310 Md. 3, 12, 526 A.2d 955 (1987).

Applying these principles to the proffered testimony, we do not believe that Mr. Sanderson's statements come

within the declaration against interest exception. We have explained that "declarations against interest ... include acknowledgment of facts which would give rise to a liability for tort or ... breach of contract." *Houck v. DeBonis*, 38 Md. App. 85, 93, 379 A.2d 765, *cert. denied*, 282 Md. 733 (1977). In the present case, however, there is no acknowledgement of indebtedness which would give rise to a tort or contract claim. Rather, Mr. Sanderson's statements to the three witnesses indicate a wish to make a gift to the Farahs at some future date. A gift with reference to a future time "is only a promise without consideration, and cannot be enforced in law or equity." *Rudo v. Karp*, 80 Md.App. 424, 430, 564 A.2d 100 (1989) (*quoting Berman v. Leckner*, 193 Md. 177, 182, 66 A.2d 392 (1949)). Consequently, Mr. Sanderson could revoke the gift at any time. Because the statements do not acknowledge an obligation enforceable in court, the declarations are not admissible under the statement against interest exception.

For the foregoing reasons, we believe that the trial court properly excluded the testimony of the three non-party witnesses.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.